WILLITZER ET AL., APPELLEES, v. McCLOUD ET AL., APPELLANTS.

[Cite as Willitzer v. McCloud (1983), 6 Ohio St. 3d 447.]

(No. 82-1020—Decided September 7, 1983.)

448

*Gallon, Kalniz & Iorio Co., L.P.A., Mr. Jack Gallon* and *Ms. Tobie Braverman,* for appellees.

*Messrs. Graham, Dutro & Nemeth, Mr. James L. Graham, Messrs. Eastman & Smith* and *Mr. James F. Nooney,* for appellant McCloud.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. James E. Davidson* and *Mr. Douglas M. Kennedy,* for appellant Industrial Commission.

*Messrs. Porter, Wright, Morris & Arthur, Mr. James E. Pohlman* and *Mr. Michael J. Rourke,* urging reversal for *amicus curiae,* Ohio State Medical Assn.

*Mr. Paul T. Key,* urging reversal for *amicus curiae,* Ohio Psychological Assn., Inc.

J. P. CELEBREZZE, J. The issue presented here is whether an independent physician examining workers' compensation claimants, at the request of the Industrial Commission for the purpose of reporting their medical conditions, is absolutely immune from a civil suit based on his examinations.

In arguing for absolute immunity from civil suit, Dr. McCloud claims that his function of examining the claimants and filing medical reports is that of a witness furnishing testimony at an adjudicatory proceeding and as a quasi-judicial officer. We disagree.

It is a well-established rule that judges, counsel, parties, and witnesses

are absolutely immune from civil suits for defamatory remarks made during and relevant to judicial proceedings. See *Erie County Farmers' Ins. Co.* v. *Crecelius* (1930), 122 Ohio St. 210; *McChesney* v. *Firedoor Corp.* (1976), 50 Ohio App. 2d 49, 51 [4 O.O.3d 28]. This immunity is based on the policy of protecting the integrity of the judicial process. The function of a judicial proceeding is to ascertain the truth. To achieve this noble goal, participants in judicial proceedings should be afforded every opportunity to make a full disclosure of all pertinent information within their knowledge. For a witness, this means he must be permitted to testify without fear of consequences. Freedom of speech in a judicial proceeding is essential to the ends of justice. 1 Harper & James, Law of Torts (1956) 423-426, Section 5.22.

Moreover, independence in decision-making is essential to preserving the integrity of the judicial process. Hence, judges are absolutely immune from civil liability for acts made within their jurisdiction. *Bradley* v. *Fisher* (1871), 80 U.S (13 Wall.) 335.

The same considerations underlying the immunity of judges provided the basis for immunity of prosecutors. Thus, prosecutors are considered "quasi-judicial officers" entitled to absolute immunity granted judges, when their activities are "intimately associated with the judicial phase of the criminal process." *Imbler* v. *Pachtman* (1976), 424 U.S. 409, 430. *Imbler* held that a prosecutor has absolute immunity "* * * in initiating a prosecution and in presenting the State's case * * *." *Id.* at 431. However, "absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions." *Dellums* v. *Powell* (C.A.D.C. 1981), 660 F. 2d 802, 805, and cases cited therein. While performing these functions, he is entitled to only a qualified immunity.

In determining whether the prosecutor's acts are quasi-judicial as opposed to investigative or administrative, the courts have applied a functional analysis of his activities, rather than simply stating that he is a prosecutor whose status entitles him to absolute immunity. *Goldschmidt* v. *Patchett* (C.A. 7, 1982), 686 F. 2d 582, 585.

Applying this functional analysis to the case at bar, we must stress that Dr. McCloud's potential liability here is not predicated on his furnishing testimony at an adjudicatory proceeding or his submission of a medical report, but rather on the manner in which he conducted his earlier medical examinations of the appellees for the purpose of reporting their medical conditions to the Industrial Commission. Dr. McCloud's out-of-court physical examinations of appellees are an investigative-medical fact-finding function — not a quasi-judicial function. In performing these examinations, he is not a witness furnishing testimony at a trial. As shown above, absolute immunity is necessary to insure that judges, prosecutors, lawyers and witnesses can perform their respective functions in an adjudicatory proceeding without harassment or fear of consequences. However, since Dr. McCloud's function of conducting out-of-court physical examinations of claimants is not "intimately associated" with the quasi-judicial phase of the procedures for ap-

plication of benefits under the workers' compensation law, the reasons for extending absolute immunity to this function are absent.

On the other hand, the claimants have no protection from inadequate medical examinations. Hence, the need for a damage remedy to an injured claimant is essential. Accordingly, we hold that an independent physician examining workers' compensation claimants, at the request of the Industrial Commission for the purpose of reporting their medical conditions, is not absolutely immune from a civil suit based on his examinations, notwithstanding that his report and testimony at an adjudicatory proceeding are privileged under the doctrine of witness immunity.

The judgment of the court of appeals is affirmed and the cause is remanded to the trial court for further proceedings not inconsistent herewith.

*Judgment affirmed.*

CELEBREZZE, C.J., PRYATEL and C. BROWN, JJ., concur.

W. BROWN, SWEENEY and HOLMES, JJ., dissent.

PRYATEL, J., of the Eighth Appellate District, sitting for LOCHER, J.

CLIFFORD F. BROWN, J., concurring. Stripping absolute immunity from civil suit for an independent physician examining workers' compensation claimants for the purpose of reporting their medical conditions is a just result. It is long overdue, supported by a thorough analysis of the facts and existing law on immunity, and leaves undisturbed judicial immunity as well as those immunities related to testimony at adjudicatory proceedings and involving quasi-judicial officers.

This decision is generated by a festering evil at the Industrial Commission, where a small minority of physicians, to whom the commission refers claimants for examination and report, are willing to sell their expertise for a substantial price. That fourteen plaintiffs, whose claims are unrelated to each other in this case, are claiming damages for insufficient medical examinations made by the same defendant-physician emphasizes such point. It is equally significant that no similar suit has been filed against any other physician who examines claimants at the request of the commission.

*Amici curiae* argue that the absolute immunity rule for physicians engaged by the commission "is not so much for the benefit of the witnesses" but is for the "benefit of the people of Ohio whose interest it is that such persons be at liberty to exercise their functions with independence and honesty, without fear of legal liability." It has been suggested as a scare tactic that any limitation upon the nonliability of a physician will have a stifling effect upon the submission of a candid and open opinion. On the contrary, the whole point is that claimants must have some assurance that physicians like Dr. McCloud will "exercise their functions with independence and honesty." Given the oscitancy which still prevails at times on this court toward Industrial

Commission claims by use of boilerplate phraseology such as "some evidence" to insulate unjust Industrial Commission decisions from effective review, it is quite clear that it is "for the benefit of the people of Ohio" to instill fear of legal liability in physicians like Dr. McCloud, as an effective way to insure that they perform "their functions with independence and honesty." Thus, a civil remedy of damages for claimants against such physicians is needed.

The vast majority of physicians who perform honest, adequate and complete medical examinations of compensation claimants have nothing to fear from our decision today. They will not be sued, or, if a frivolous claim is filed, it will not survive a motion for summary judgment by the defendant. The scare tactic that the floodgates of litigation will be loosed is too often raised as a spectre to avoid improving the quality of justice through establishing a change in the law. For example, this unfounded floodgate spectre was unsuccessfully urged by those who opposed declaring the guest statute unconstitutional in *Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195 [72 O.O.2d 112].

Thus, while the physician is immune from liability for damages as a result of his submitting false or defamatory statements as to the medical condition of the individual examined, the physician may be held liable for damages on a theory akin to malpractice by virtue of his failure to conduct an adequate and complete examination. *Ayers* v. *Russell* (1888), 3 N.Y. Supp. 338; *Rhiver* v. *Rietman* (1970), 148 Ind. App. 266, 265 N.E. 2d 245; *DiGiovanni* v. *Pessel* (1969), 104 N.J. Super. 550, 250 A. 2d 756, modified on issue of damages (1970), 55 N.J. 188, 260 A. 2d 510; *Miller* v. *West* (1933), 165 Md. 245, 167 A. 696; *McLean* v. *Sale* (1978), 38 N.C. App. 520, 248 S.E. 2d 372.

Rules of law to encourage and preserve honesty among human beings, fashioned by our decision today, are the finest goal and purpose of justice.

It is axiomatic that no wrong should be suffered without a legal remedy. However, under this court's "some evidence" standard for review of Industrial Commission decisions, even an action in mandamus, originally filed in the court of appeals, can be incapable of remedying an unjust decision of the commission. At the very least, an inadequate medical examination of a claimant by Dr. McCloud can delay the proper resolution of a case by forcing it through the long process of administrative appeals and an original action in the court of appeals. *E.g., State, ex rel. Berry,* v. *Indus. Comm.* (1983), 4 Ohio St. 3d 193, concurring opinion, at 196-197; *State, ex rel. Hughes,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 57, 60, concurring opinion, at 61; *State, ex rel. Allerton,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 396 [23 O.O. 3d 358]; *State, ex rel. Teece,* v. *Indus Comm.* (1981), 68 Ohio St. 2d 165 [22 O.O. 3d 400]. Cf. *State, ex rel. Jennings,* v. *Indus. Comm.* (1982), 1 Ohio St. 3d 101, 102.

These cases also reveal that the Industrial Commission is unlikely to invoke internal sanctions against Dr. McCloud under its rulemaking power set forth under R.C. 4123.05 and 4123.53. Moreover, this court is unlikely to determine that the commission relied on a medical report derived from an inadequate examination by Dr. McCloud.

SWEENEY, J., dissenting. The majority holds by way of syllabus that appellant "is not absolutely immune from a civil suit based on his examinations, notwithstanding that his report and testimony at an adjudicatory proceeding are privileged under the doctrine of witness immunity." The dichotomy thus created between the witness' out-of-court examinations and in-court testimony is false insofar as it imputes a separate, independent legal existence to the necessary preliminary stages of an expert's participation in a case. To say that the "function of conducting out-of-court physical examinations of claimants is not 'intimately associated' with the quasi-judicial phase" is to ignore the purpose of referring a claimant to a specialist in the first place. Without a pre-appearance examination the expert's testimony is necessarily conjectural. The examination is " 'intimately associated' " with the quasi-judicial phase because it is the examination that makes the subsequent testimony probative of anything.

The majority further asserts that "the need for a damage remedy to an injured claimant is essential." Yet the damages appellees seek flow from appellant's testimony and the commission's reliance thereon. These asserted damages consist of the difference between the amount the commission awarded each appellee and the amount the commission would have awarded if appellant had not made his examinations and entered his testimony. The allegedly deficient examinations, standing alone, caused no damages to appellees.[2] It was appellant's testimony before the commission that provided the basis for the commission's awards, setting benefits at levels lower than those to which appellees believed themselves entitled. Thus, even if the dubious bifurcated-function theory advanced by the majority is adopted, the "damage remedy" created thereby is necessarily linked to the physician's testimony and not his examination. The majority makes it quite clear that it does not intend to abrogate testimonial immunity totally, stating that "absolute immunity is necessary to insure that judges, prosecutors, lawyers and witnesses can perform their respective functions in an adjudicatory proceeding without harassment or fear of consequences." If a witness is to continue to enjoy the testimonial privilege the majority seems to want to provide, then appellant should be immune both under traditional doctrine and under the novel, and in my view erroneous, theory posited herein.

Appellees do make serious allegations, the substance of which is that appellant is an abuser of the system. According to appellees, appellant makes minimal examinations, uniformly recommends the denial or reduction of benefits, and then collects his fee. Nevertheless, the abuses appellees complain of can be corrected without abrogating the traditional witness immunity.

In my view, the judicial or administrative body employing a negligent expert has the authority to invoke internal sanctions thereby obviating the need

---

[2] There is no allegation here that any of the claimants' injuries were enhanced or aggravated as a result of their submission to examinations by appellant.

for an aggrieved party to seek an alternate forum. If, for example, this court determined that the commission's reliance on testimony derived from an inadequate examination constituted an abuse of administrative discretion as a matter of law, then the same practical result is reached without having to file a separate lawsuit.

This approach would preclude the admission or consideration by the commission of medical reports based on inadequate examinations. The effect would be to make the administrative process self-correcting. Adoption of this procedural mechanism, moreover, would permit the proceedings to be administratively self-contained by eliminating the potential for collateral lawsuits in diverse forums based on the same underlying facts.[3] Most importantly, this approach preserves the traditional witness immunity without jeopardizing the rights of claimants who are aggrieved by negligent or corrupt expert witnesses.

For the reasons hereinbefore stated, I would reverse the court of appeals; provided, however, that testimony or medical reports based on inadequately or otherwise negligently performed examinations could not be considered as evidence by the commission in setting appropriate benefit levels.

WILLIAM B. BROWN, J., dissenting. I wholeheartedly concur in Justice Sweeney's dissent and would note that this position has found support in other jurisdictions. See *Seibel* v. *Kemble* (1981), 63 Haw. 516, 631 P. 2d 173 (Ogata, J., Supreme Court of Hawaii).

HOLMES, J., dissenting. The issue presented here is whether a medical specialist, who is consulted by a state agency for the purpose of rendering an expert opinion, is free from liability relating to physical examinations performed for the purpose of formulating an expert opinion. In other words, does such expert so conduct this professional activity with absolute immunity? My position now, as in the past, is that he does enjoy such absolute immunity.

Accordingly, in the case of *Howard* v. *Weiss, M. D.* (Sept. 16, 1976), Franklin App. No. 76AP-113, unreported, a libel case, I made the following comments, first, as to the nonexistence of a physician-patient relationship:

"* * * as stated by the trial court, the law of Ohio as expressed in *State, ex rel. Galloway,* v. *Industrial Commission* [(1938), 134 Ohio St. 496 (13 O.O. 102)], provides that the medical examinations of claimants within the Industrial Commission do not involve the physician-patient relationship. Although this principle as brought forth in *State, ex rel. Galloway* was set forth in the opinion rather than the syllabus of that case, it is our view that

---

[3] As Judge Potter noted in his dissent, "the rationale of the [court of appeals] majority would seem to me to apply to all expert witnesses and perhaps to others in a myriad of cases." There is nothing in the bifurcated-function theory that limits its applicability to expert witnesses although this theory is most likely to be asserted when expert witnesses are involved.

this is an acceptable expression of the applicable law on the point within Ohio."

Specifically, as to the type or degree of privilege that would be enjoyed by the physician in these physical examinations and reports in the Industrial Commission, I stated:

"We hold that the complained of contents of the report here could not so provide an actionable claim in libel, in that we believe such to have constituted a professional medical opinion made after examination of this claimant and, as such, was absolutely privileged.

"There are certain occasions as recognized in the law where there is great enough public interest to warrant providing a wide degree of latitude in the expression of one's opinion without the fear of rendering oneself vulnerable to civil suit. In such instances, the law, either by way of statute or case law, provides that statements made or published which would otherwise be actionable, are determined to be privileged.

"'* * *

"We have little difficulty here in concluding that the public policy of the matter would dictate the conclusion that a privilege should be extended to a report of a physician in such administrative proceeding, but the question is, of what nature should it be?

"It is rather uniformly recognized and accepted that judges, counsel, parties, and witnesses are absolutely exempt from responsibility for libel or slander for words otherwise defamatory published in the courts of judicial proceedings. See, generally, 34 Ohio Jurisprudence 2d, Libel and Slander, Section 75, at page 240; 50 American Jurisprudence 2d, Libel and Slander, Section 231, at page 743.

"'* * *

"The texts and articles on the subject note that there has been a tendency in the case law in this country to extend the absolute privilege to administrative proceedings. Such courts extend the privilege to protect the communications where the administrative officer or agency is exercising a judicial or quasi-judicial function. See 50 American Jurisprudence 2d, Libel and Slander, Section 234, at page 746. In such textual material we find that, 'Although there is authority to the contrary, proceedings before workmen's compensation commissions in connection with employees' claims usually are held to be judicial or quasi-judicial so that communications are privileged.'

"We need not, for purposes of this issue, determine whether the absolute privilege would attach to all of the facets of proceedings within the Industrial Commission. We need only determine the privilege, if any, to be afforded a professional opinion as rendered by a physician to the Industrial Commission, such opinion being filed within the claim file of the employee.

"It is our view that public policy is best served by providing immunity from suit to the physician in such instances, and by so doing permit the doctor to give his professional opinion freely and without fear of civil liability. We arrive at this view by balancing the slight possibility of a physician

distorting his professional opinion for malicious purposes against the almost certain probability that any limitation upon nonliability of the physician will have a stifling effect upon the submission of a candid and open opinion. Thus, a qualified privilege will not serve the interest of justice as well as an absolute privilege. The interest to be protected here is similar to that of a witness at a trial."

I conclude that the same reasoning should be applied to the cause *sub judice,* and would hold that a physician acting as an arm of the Industrial Commission in performing independent medical examinations of compensation claims, and rendering opinions to the commission based thereon, is both a witness and a quasi-judicial officer and, as such, enjoys absolute immunity from a civil action by a claimant alleging a reduction or denial of benefits as the result of the examination or the reporting of opinions resulting therefrom.

Accordingly, I would reverse the judgment of the court of appeals.