ELLIOTT, Appellant,

v.

OHIO DEPARTMENT OF INSURANCE, Appellee.

[Cite as *Elliott v. Ohio Dept. of Ins.* (1993), 88 Ohio App.3d 1.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–813.

Decided April 15, 1993.

*William J. Clark & Assoc.* and *William J. Clark,* for appellant.

*Lee Fisher,* Attorney General, *Dianne Goss Paynter* and *William M. Mattes,* Assistant Attorneys General, for appellee.

WHITESIDE, Judge.

Plaintiff-appellant, Stephen Elliott, appeals from a dismissal of his complaint by the Ohio Court of Claims. Plaintiff raises two assignments of error as follows:

"1. The Trial Court erred in dismissing appellant's claim against the Ohio Department of Insurance because the 'CATCH' system employed by the Department constitutes a manifest violation of the duty to provide due process of law before denial or revocation of appellant's insurance licenses."

"2. The trial court erred in finding that the Ohio Department of Insurance employees Doris Mason and Ron McLean did not act outside the scope of their employment nor did they act with malicious purpose, in bad faith or in a wanton or reckless manner."

Plaintiff filed a complaint in the Franklin County Court of Common Pleas against Doris Mason, the Warden ("Warden") of the Ohio Department of Insurance ("ODI"), and Ron McLean, an ODI Investigator ("Investigator"), seeking damages for the actions taken by defendant during an investigation before he was given a hearing on charges of misconduct. The court dismissed the complaint after determining that only the Ohio Court of Claims had jurisdiction. No appeal was taken.

Plaintiff then filed a complaint in the Ohio Court of Claims against the state of Ohio acting through the Ohio Department of Insurance. The Ohio Court of Claims dismissed the complaint against the state pursuant to Civ.R. 12(B)(6), finding that the complaint failed to state a claim for relief because the state was not liable. The court also made a finding under R.C. 2743.02(F) that the individuals were entitled to personal immunity pursuant to R.C. 9.86, since their actions were not outside the scope of their employment.

Plaintiff was a licensed insurance agent in Ohio for certain insurance companies. On November 4, 1987, the Warden directed a letter to plaintiff requesting a meeting to discuss two applications that plaintiff had written for nursing-home policies which did not disclose adverse medical information. In June 1988, plaintiff entered into a contract with State Auto Insurance Companies ("State Auto"), under which plaintiff was made their agent. State Auto submitted the requisite written notice to ODI pursuant to R.C. 3905.01. In September, the Warden sent a letter to State Auto informing the company that ODI could not process plaintiff's license because ODI was conducting an investigation of plaintiff. On October 1, 1988, plaintiff received a notice from State Auto indicating that he was no longer to receive applications for insurance for them. State Auto terminated the agency agreement on August 1, 1989.

On November 2, 1988, plaintiff received a copy of "Notice of Opportunity for Hearing and of Proposed Revocation of Insurance Agent License" from ODI. On November 21, 1988, the Warden wrote to Midland Mutual and Pyramid Life Insurance Companies[1] advising them that, because of the investigation, ODI could not process the license for plaintiff to be their agent. On November 30, 1988, plaintiff requested a formal hearing, which was held on March 16 and 17, 1989. The hearing officer recommended a finding that plaintiff had violated R.C. 3905.49(A)(9), 3901.21, and Ohio Adm.Code 3901–1–40(B)(3), (B)(7)(b), (B)(8), and 3901–1–07(C)(a), and recommended a one-year suspension of all plaintiff's licenses. The recommended violation findings were for unfair and deceptive trade acts within the insurance industry. Plaintiff filed objections to the hearing officer's report, but the Superintendent of Insurance adopted the hearing officer's report and recommendation. Plaintiff appealed to the Franklin County Court of Common Pleas and then to this court, which affirmed the superintendent's order in *In the Matter of Suitability of Stephen M. Elliott to Remain Licensed as an Insurance Agent in the State of Ohio* (Dec. 10, 1991), Franklin App. No. 91AP–785, unreported, 1991 WL 268313.

By his first assignment of error, plaintiff argues that the Court of Claims erred in dismissing his claims against the state because the "CATCH" system employed by ODI constitutes a violation of due process. The "CATCH" system is described as an in-house policy in which:

"[A]n individual's name will be entered into the Department's 'CATCH' system, if the Department is conducting an investigation of an agent regarding allegations which are serious and the Department has compiled evidence that tends to support the allegations. If an agent's name is entered on the computer into the CATCH system, all insurance agent applications submitted on behalf of the individual will be forwarded to the Warden for review. At this time the Warden will issue a letter informing the requisitioning company of an ongoing investigation." (Affidavit of Warden, at 3.)

Plaintiff argues that he was denied his due process rights because, under the "CATCH" system, letters were sent to the insurance companies, thereby denying his licenses before he was given an opportunity for a hearing. Defendant filed a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim for which relief could be granted. In ruling on the motion,[2] the Court of Claims determined that the

---

1. Count three of plaintiff's complaint references Commonwealth Insurance Company also, but the record and briefs do not discuss that company.

2. The affidavits and other evidence submitted in connection with R.C. 2743.02(F) cannot be considered in connection with the Civ.R. 12(B)(6) motion, since the trial court did not convert it to a motion for summary judgment.

complaint did not state a claim upon which relief could be granted and dismissed the complaint for the reasons stated in the motion to dismiss.

The complaint contained seven counts and alleged as follows:

Count one: The state, through ODI, illegally induced the breach of the agreement between State Auto and plaintiff.

Count two: Section 1983, Title 42, U.S.Code action for suspension of plaintiff's license without due process.

Count three: Illegal interference with a contract.

Count four: Damages for emotional and psychological distress.

Count five: Defamation.

Count six: Interference with business relations.

Count seven: Conspiracy to ruin business.

Defendant's motion to dismiss for failure to state a claim, pursuant to Civ.R. 12(B)(6), contained several contentions as to why no relief could be granted. Defendant argues that count two of the complaint does not state a claim for relief, since Section 1983, Title 42, U.S.Code claims cannot be heard in the Ohio Court of Claims since the state is not a "person" within the meaning of Section 1983. Count five of the complaint is outside the statute of limitations. Defendant argues that the remaining counts of the complaint do not state a claim for relief because the public duty immunity doctrine applies and prevents liability of the state. In addition, defendant contends that the prosecutorial immunity doctrine provides governmental immunity to the state and personal immunity to the individual employees.

The Court of Claims dismissed the complaint pursuant to defendant's Civ.R. 12(B)(6) motion of dismissal for failure to state a claim based on the arguments in defendant's motion, finding the state not liable even though the employees acted within the scope of their employment, making them entitled to personal immunity pursuant to R.C. 9.86.[3]

The Ohio Supreme Court has stated in the syllabus of *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, that: "In order for a court to dismiss a complaint for failure to state a claim upon which relief may be granted [Civ.R. 12(B)(6) ], it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." The Court of Claims determined from examining the

---

3. Under R.C. 2743.02(A)(1), the filing of the complaint against the state "results in a complete waiver of any cause of action * * * against any officer or employee."

complaint that, even assuming to be true the plaintiff's allegations that ODI acted improperly, plaintiff is still precluded from recovering any damages.

 The Court of Claims inappropriately applied the public-duty doctrine in this case. The Ohio Supreme Court described the public-duty doctrine in *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, paragraph two of the syllabus, which reads:

"When a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury."

Therefore, an individual may not recover damages when the duty is a public one, in the absence of a special duty or relationship. In *Anderson v. Ohio Dept. of Ins.* (1991), 58 Ohio St.3d 215, 219, 569 N.E.2d 1042, 1045, the Ohio Supreme Court, citing *Sawicki* at 232, 525 N.E.2d at 478, stated the four elements necessary to establish the existence of a special duty:

"The state, through the promises or actions of its employees, must evidence the assumption of an affirmative duty to act on behalf of the injured party and must be aware that its inaction would lead to the alleged harm. Direct contact between the state and the injured party also must occur. Finally, the injured party must justifiably rely upon the state's affirmatively undertaking its promised form of relief."

In this case, a special duty exists, since the essential elements are present. There is a special duty to an applicant for a license to pursue a particular business different in kind from the duty to the public with respect to licensure. *Anderson* holds that, although an administrative decision (such as whether to grant a license) involved a basic policy decision as to which immunity attaches, such immunity does not apply to negligent actions of employees in carrying out that decision. Here, tortious conduct allegedly occurred prior to the hearing, resulting in denial of the license.

In *Reynolds v. State* (1984), 14 Ohio St.3d 68, 14 OBR 506, 471 N.E.2d 776, paragraph one of the syllabus, the Ohio Supreme Court established a rule to determine when a private cause of action may be instituted against the state:

"[T]he state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion."

Defendant argues that this case fits within this description of policy decisions which include a high degree of discretion, since the decision to grant a license to

an agent involves discretion. When an insurance company applies for a license for an agent, R.C. 3905.01(B) provides, in pertinent part:

"Upon written notice by an insurance company authorized to transact business in this state of its appointment of a person to act as its agent, the *superintendent, if he is satisfied that the appointee is a suitable person and intends to hold himself out in good faith as an agent;* that the appointee *is honest, trustworthy, and understands the duties and obligations of an agent,* and is familiar with the insurance laws of this state and with the terms and provisions of the policies and contracts of insurance he proposes to effect; that in applying for such license it is not the appointee's purpose or intention principally to solicit or place insurance on the appointee's own property or that of relatives, employers, or employees or that for which they or the appointee is agent, custodian, vendor, bailee, trustee, or payee; and that the appointee has completed the educational requirements set forth in section 3905.48 of the Revised Code, *shall issue to the appointee a license* which shall state in substance that the company is authorized to do business in this state and that the person named therein is a constituted agent of the company in this state for the transaction of such business as it is authorized to transact therein." (Emphasis added.)

This section requires the superintendent to determine whether the appointee meets the statutory requirements in order to be a licensed agent, including whether the appointee is "suitable, honest and trustworthy." A license is not automatically to be granted to an appointee; rather, the appointee must meet the statutory qualifications and requirements, and the superintendent must exercise discretion to determine whether the statutory requirements are met. Since the licensing of agents involves a high degree of discretion and judgment by the superintendent, the defendants argue that the state is not liable in a private cause of action as a result of the exercise of such judgment and discretion by the superintendent. Although this may be correct, the complaint is not predicated upon alleged actions of the superintendent.

■ In *Reynolds,* in paragraph one of the syllabus, the Ohio Supreme Court also stated that, once a basic policy decision involving a high degree of discretion for which the state is immune from liability has been made, "the state may be held liable, in the same manner as private parties, for the negligence of the actions of its employees and agents in the performance of such activities." It was not the action of the superintendent of which plaintiff complains but, rather, the actions of the Warden and the Investigator. The public duty immunity applies only to the discretionary decision of the superintendent, not the implementation of that decision which plaintiff alleges as the predicate for his claim. The state is not immune from liability in this case for the actions of its employees, the Warden and the Investigator, if they breached a duty to plaintiff.

█ The second count of the complaint, however, cannot be brought in the Court of Claims. Claims under Section 1983, Title 42, U.S.Code cannot be heard in the Ohio Court of Claims, since the state is not a "person" within the meaning of Section 1983. *Will v. Michigan Dept. of State Police* (1989), 491 U.S. 58, 71, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45, 58. Moreover, an R.C. 2743.02(F) determination under state law does not apply to Section 1983 actions under federal law.

Count five of the complaint also does not state a claim for relief, since it is barred under the statute of limitations, R.C. 2305.11. Count five involves a claim for defamatory statements made in conversations the Investigator had with plaintiff's daughter on October 7, 1988. The complaint was filed on August 8, 1990, and the amended complaint was filed on April 12, 1991. In plaintiff's memorandum contra defendants' motion for partial summary judgment,[4] plaintiff concedes that count five of his complaint is outside the one-year statute of limitations.

Count six of the complaint also fails to state a claim for relief because it likewise is barred by R.C. 2305.11, since it seeks damages based solely on the allegedly defamatory statements set out in count five and alleges no independent basis for a claim. Count seven of the complaint is also predicated on count five. Count seven seeks damages as a result of the illegal actions taken; however, no illegal actions have been alleged other than in the defamation alleged in count five, which is barred. The letters which were directed by the Warden to the insurance company contained no inaccurate information and were in accordance with ODI policy.

█ The Court of Claims also incorrectly applied the prosecutorial immunity doctrine to this case. In order to protect the integrity of the independence of decision-making in the judicial process, judges are absolutely immune from civil liability for acts made within their jurisdiction. *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 449, 6 OBR 489, 490–491, 453 N.E.2d 693, 695, citing *Bradley v. Fisher* (1871), 80 U.S. (13 Wall.) 335, 20 L.Ed. 646. Also, prosecutors "are considered 'quasi-judicial officers' entitled to absolute immunity granted judges, when their activities are 'intimately associated with the judicial phase of the criminal process.' " *Willitzer*, at 449, 6 OBR at 490–491, 453 N.E.2d at 694, citing *Imbler v. Pachtman* (1976), 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128, 143. Under federal law, the immunity also applies to civil proceedings and government officials in addition to prosecutors. *Butz v. Economou* (1978), 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895. For purposes of this case, we will

---

**4.** The memorandum is in the record; however, for purposes of the Civ.R. 12(B)(6) motion, the trial court could look only to the amended complaint, which did not contain the dates of the alleged defamation.

assume Ohio law to be the same as federal law. In this case, the actual hearing regarding the revocation of plaintiff's insurance agent license would fall within prosecutorial immunity. However, the actions of which plaintiff complains occurred during the investigation prior to the hearing. Furthermore, the "hearing" was quasi-judicial only in the sense that plaintiff's entitlement to a license was to be determined. (At some point, the proceeding was extended to include licenses previously granted to plaintiff with other companies.) When performing investigative or administrative functions, the immunity is only qualified. *Willitzer*, at 449, 6 OBR at 490–491, 453 N.E.2d at 694, citing *Dellums v. Powell* (C.A.D.C. 1981), 660 F.2d 802, 805. The investigation does not entail absolute immunity.

The complaint does not allege that the "CATCH" system constitutes a violation of the duty to provide due process of law before denial or revocation of insurance licenses, the issue the assignment of error in this court raises. The complaint does state that the actions taken because of the "CATCH" system are wrong. The complaint does not fail to state a claim for relief as to counts one, three and four on the basis that the state is immune. The complaint also alleges that, since the state did not act in a timely manner on the application for agent license submitted by State Auto on behalf of plaintiff, plaintiff is entitled to the license, claiming that ODI is estopped from denying the license to plaintiff.

Apparently, even though no license had been issued, plaintiff was writing applications for insurance and soliciting business for State Auto during the pendency of the licensing notice until ODI informed State Auto of the investigation. R.C. 3905.01(B) provides, in part:

"No person shall procure, receive, or forward applications for insurance unless he is a resident of this state and duly licensed by the superintendent of insurance."

This section prevents one from procuring, receiving or forwarding applications for insurance unless duly licensed. R.C. 3905.01(B) also confers upon the superintendent discretion in granting licenses. The Ohio Supreme Court has long held that the Superintendent of Insurance has discretion in granting a license. See *State ex rel. Fed. Union Ins. Co. v. Warner* (1934), 128 Ohio St. 261, 262, 190 N.E. 575, 576, and cases cited therein.

If the Revised Code provided that an agent was granted an interim license immediately upon the filing of the notice of appointment by the insurance company, plaintiff would have a basis for an argument that he was entitled to act as an agent under such "temporary license" until the hearing, and that for this reason the letter sent to State Auto was improper. However, since no license is automatically granted when the notice is filed, and the hearing resulted in a determination that he should not be issued a license because he had engaged in

unfair and deceptive trade acts within the insurance industry,[5] plaintiff has not demonstrated any injury even assuming there was negligence or other tortious conduct.

Although the Court of Claims' decision may have been predicated upon erroneous reasons, plaintiff has not alleged any conduct by the employees which is actionable tortious conduct to be imputed to the state. The conduct which the complaint contains is (1) unreasonable delay in granting the State Auto license, (2) the letters which were sent to the insurance companies by the Warden, and (3) the alleged defamatory statements made by the Investigator to plaintiff's daughter. The alleged unreasonable delay is no basis for a claim, since the superintendent found that plaintiff was not entitled to the license and suspended all of his other licenses. Thus, plaintiff suffered no loss from the delay. The letters were not improper, since they contained truthful statements and were part of ODI policy. The Warden was acting within the scope of her employment in sending the letters. The defamation claim is barred by the statute of limitations. Therefore, the conduct which the complaint contends is actionable either is not tortious conduct, or no injury has been alleged, or the action is barred. The complaint fails to state a claim for relief, since it does not contain any actionable tortious conduct by the employees imputable to the state. Consequently, the first assignment of error is not well taken.

By his second assignment of error, plaintiff contends that the trial court erred in finding that the ODI Warden and Investigator did not act outside the scope of their employment, and did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiff had filed a motion in the Court of Claims seeking an R.C. 2743.02(F)[6] determination that the employees were acting outside the scope of their employment. Under this section, the action must first be filed against the state in the Court of Claims, which determines from the affidavits, other documents and memoranda of counsel submitted by the parties if the state is liable by determining if the individual employees acted

5. Plaintiff has conceded that the Superintendent of Insurance found him guilty of deceptive trade acts within the insurance industry and denied the State Auto license in addition to suspending all his other licenses for one year.

6. R.C. 2743.02(F) provides:

"A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

outside the scope of their employment, with malicious purpose, in bad faith or in a wanton or reckless manner. *Tschantz v. Ferguson* (1989), 49 Ohio App.3d 9, 550 N.E.2d 544, paragraph one of the syllabus. If the employees did not act outside the scope of their employment, with malicious purpose, in bad faith, or in a wanton or reckless manner, then the employees are entitled to personal immunity under R.C. 9.86,[7] and the state is liable for their conduct if tortious and actionable. In this case, the Court of Claims determined that the employees did not act outside the scope of their employment, with malicious purpose, in bad faith or in a wanton or reckless manner and are entitled to personal immunity.

As pertinent herein, the determination by the Court of Claims that the employees acted within the scope of their employment indicates only that the state could be liable, since the employees were acting within the scope of their employment. As held in *Tschantz*, paragraph two of the syllabus, this determination may not be binding in an action brought in a court of common pleas action against the employees.[8] Whether the Court of Claims decision is *res judicata* and precludes plaintiff from bringing an action against the employees in common pleas court can be properly determined only when and if plaintiff attempts to bring an action against the employees in common pleas court. Furthermore, in light of our determination of the first assignment of error, the issue raised by the second assignment of error is moot.

For the foregoing reasons, the first assignment of error is overruled, the second assignment of error is moot, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

BOWMAN and TYACK, JJ., concur.

---

7. R.C. 9.86 provides in part:
 "[N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

8. See, however, *Nease v. Med. College Hosp.* (1992), 64 Ohio St.3d 396, 596 N.E.2d 432, in a case removed from the common pleas court to the Court of Claims.