[Cite as *Presutto v. Hull*, 2018-Ohio-3103.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

JALEH PRESUTTO, et al.

    Appellees

    v.

BRADLEY HULL, IV, et al.

    Appellees

    and

CARL SULLIVAN, ESQ.

    Appellant

    and

MICHAEL O'MALLEY

    Appellant

C.A. No.    17CA011218

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    17CV192603

DECISION AND JOURNAL ENTRY

Dated: August 6, 2018

---

TEODOSIO, Presiding Judge.

{¶1}  Carl Sullivan and Michael O'Malley appeal the order of the Lorain County Court of Common Pleas denying their motion to dismiss.  We reverse and remand.

I.

{¶2}  In June 2017, Jaleh Presutto filed a complaint against various family members; their attorneys, Bradley Hull IV, David Weilbacher, and Adam Fried; the Brecksville Police Department; Mr. Sullivan, an assistant prosecutor for Cuyahoga County; Mr. O'Malley, an

investigator employed by the Cuyahoga County Prosecutor's Office; David Kessler, an investigator employed by the Fairfield County Prosecutor's Office; and others. In her complaint, Ms. Presutto alleged claims of malicious prosecution, false imprisonment, defamation, and intentional infliction of emotional distress against the various defendants. The case arose as part of a dispute regarding the guardianship of Ms. Presutto's mother, resulting in several court cases among the family members. In 2015, Ms. Presutto had been indicted and arrested on charges of kidnapping, abduction, aggravated theft, and telecommunications fraud. Ms. Presutto alleges the defendants acted to bring false charges against her so that she would be removed as guardian for her mother and another family member would be appointed, thereby giving them control of family assets in a divorce case between her father and mother. The charges against Ms. Presutto were eventually dismissed.

{¶3} In August 2017, Mr. Sullivan and Mr. O'Malley filed a motion to dismiss on the basis of immunity, and Ms. Presutto filed a brief in opposition. In September 2017, the trial court denied the motion to dismiss, stating:

> Plaintiff alleges that they were more personally involved in her prosecution than in their capacity as "quasi-judicial officers." They did more than initiate a prosecution and present the case against her. As such, absolute immunity would not apply and her allegations of malice would fall under the exception to statutory immunity in [] R.C. 1744.03(A)(6)(b). It is too early in the court process to determine whether there is evidence to support this claim of whether Defendants can establish that they are immune from suit as a matter of law.

{¶4} Mr. Sullivan and Mr. O'Malley now appeal, raising one assignment of error. Ms. Presutto has not filed an appellate brief in this matter, and this Court may therefore "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." App.R. 18(C).

II.

ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY DENYING APPELLANTS' MOTION TO DISMISS.

{¶5}    Mr. Sullivan and Mr. O'Malley argue the trial court erred by denying their motion to dismiss. Specifically, they argue they are entitled to absolute immunity. We agree.

{¶6}    "An appellate court reviews a trial court order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) under a de novo standard of review." *Hudson v. Akron*, 9th Dist. Summit No. 28011, 2017-Ohio-7590, ¶ 8, citing *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5. "Dismissal is appropriately granted once all the factual allegations of the complaint are presumed true and all reasonable inferences are made in favor of the nonmoving party, and it appears beyond doubt that the nonmoving party cannot prove any set of facts entitling him to the requested relief." *Natl. Check Bur. v. Buerger*, 9th Dist. Lorain No. 06CA008882, 2006-Ohio-6673, ¶ 8, citing *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 1992-Ohio-73. A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere conclusions or a formulaic recitation of the elements of a cause of action. *Vagas v. City of Hudson*, 9th Dist. Summit No. 24713, 2009-Ohio-6794, ¶ 13, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Moreover, conclusory statements in the complaint, not supported by facts are not afforded the presumption of veracity." *Id.*, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 193 (1988). Thus, the focus of our inquiry must be the facts alleged in the complaint. *See id.*

{¶7}    "[I]t is well-settled common law in Ohio that prosecutors enjoy absolute immunity from suit for acts committed in their roles as judicial officers. Prosecutors are considered 'quasi-judicial' officers, and as such they are entitled to absolute immunity when

their activities are 'intimately associated with the judicial phase of the criminal process.'" *Thomas v. Bauschlinger*, 9th Dist. Summit No. 26485, 2013-Ohio-1164, ¶ 16, quoting *Hawk v. Am. Elec. Power Co.*, 3d Dist. Allen No. 1-04-65, 2004-Ohio-7042, ¶ 8, quoting *Willitzer v. McCloud*, 6 Ohio St.3d 447, 449 (1983). "The decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function." *Id.*, quoting *Hawk* at ¶ 9. "Therefore, Courts have held that the immunity of prosecutors extends to allegations of malicious prosecution." *Id.* Furthermore, "courts have held that a prosecutor's decision to not preserve or turn over exculpatory material before trial is protected by absolute immunity, despite the fact it is a violation of due process." *McClellan v. Franklin Cty. Bd. of Commrs.*, 10th Dist. Franklin No. 08AP-782, 2009-Ohio-3955, ¶ 22, citing *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir.2003).

{¶8} In discussing the public policy underlying the application of absolute immunity to a prosecutor, the Supreme Court of the United States has stated:

> If a prosecutor had only a qualified immunity, the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.
>
> Moreover, suits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, and -- ultimately in every case -- the likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a § 1983 action often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury. It is fair to say, we think, that

the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

(Citations omitted.) *Imbler v. Pachtman*, 424 U.S. 409, 424-426 (1976). These concerns remain relevant in the case now before us for review.

{¶9} However, absolute immunity does not extend to a prosecutor engaged in essentially investigative or administrative functions, and while performing such functions, a prosecutor is entitled to only a qualified immunity. *Willitzer* at 449. "In determining whether the prosecutor's acts are quasi-judicial as opposed to investigative or administrative, the courts have applied a functional analysis of his activities, rather than simply stating that he is a prosecutor whose status entitles him to absolute immunity." *Id*. With regard to this distinction, the Supreme Court of the United States stated:

[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity. Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

On the other hand, * * * the actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity "'represents the norm'" for executive officers, *Malley v. Briggs*, 475 U.S. at 340, quoting *Harlow v. Fitzgerald*, 457 U.S. at 807, so when a prosecutor "functions as an administrator rather than as an officer of the court" he is entitled only to qualified immunity. *Imbler*, 424 U.S. at 431, n. 33. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago*, 484 F.2d 602, 608 (CA7 1973)

> (internal quotation marks omitted), cert. denied, 415 U.S. 917, 39 L. Ed. 2d 471, 94 S. Ct. 1413, 94 S. Ct. 1414 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." 484 F.2d at 608-609.

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

{¶10} The complaint in the present case alleged that Ms. Presutto "was maliciously and without probable cause indicted" and that "the indictment was procured through the efforts" of Mr. Sullivan and Mr. O'Malley. The complaint went on to make several allegations against "the Defendants," without specifically naming Mr. Sullivan and Mr. O'Malley, including that "[t]he Defendants conspired together to cause the arrest, indictment and imprisonment of [Ms. Presutto] * * *." With regard to the claim for malicious prosecution, the complaint alleged "[t]he Defendants acted intentionally and maliciously in concert and in bad faith with one another for the purpose of instituting the criminal action against [Ms. Presutto] by illegally procuring [her] indictment and arrest." The complaint further alleged that "[b]y the acts of procuring a false indictment, having [Ms. Presutto] arrested, and separating [her] from her family, the Defendants worked in concert with each other to intentionally cause Plaintiff to suffer emotional distress."

{¶11} Upon review of Ms. Presutto's complaint, we conclude that it is devoid of any facts establishing Mr. Sullivan and Mr. O'Malley acted beyond their scope as quasi-judicial officers engaged in the process of initiating a prosecution and procuring an indictment. As we have noted, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than conclusory statements unsupported by facts. *See Vagas v. City of Hudson*, 9th Dist. Summit No. 24713, 2009-Ohio-6794, ¶ 13. With regard to Mr. Sullivan, the complaint stated that he was in communication with Mr. Hull to devise a strategy to quash a subpoena requiring Mr. Kessler to appear for a deposition relating to a report he filed in a Lorain County Probate

Court case for the guardianship of Ms. Presutto's mother. The complaint further stated that Mr. Sullivan directed Mr. Hull to file a motion for a protective order to prevent said deposition. These allegations involving the prior guardianship case offer no support for Ms. Presutto's claims in the present case. The only other facts stated by the complaint with regard to Mr. Sullivan and Mr. O'Malley indicate that they acted to initiate a prosecution against Ms. Presutto, a function intimately associated with the judicial phase of the criminal process, and thereby protected by an absolute immunity. *See Thomas v. Bauschlinger*, 9th Dist. Summit No. 26485, 2013-Ohio-1164, ¶ 16.

{¶12} We note that although Mr. O'Malley is an investigator employed by the Cuyahoga County Prosecutor's Office, rather than an assistant prosecutor, the complaint fails to allege facts that would implicate investigative functions that would fall outside the protections of absolute immunity. *See Joseph v. Patterson*, 795 F.2d 549, 559-560 (6th Cir.1986) (indicating that investigators who carry out duties related to the judicial process pursuant to the express direction and control of a prosecutor, i.e., "functioning as the *alter ego* of the prosecutor," also have absolute immunity").

{¶13} We further note that the application of absolute immunity to Mr. Sullivan and Mr. O'Malley applies regardless of the fact that the complaint listed them in both their official and individual capacities. Once again, the complaint only alleges facts involving their scope as quasi-judicial officers, and once absolute immunity has been established, it cannot be defeated by application of the malicious purpose/bad faith qualified immunity provisions of R.C. 2744.03(A)(6). *See Moore v. City of Cleveland*, 8th Dist. Cuyahoga No. 100069, 2014-Ohio-1426, ¶ 22. *See also Richard v. Rice*, 91 Ohio App.3d 199, 201 (8th Dist.1993) (stating that if absolute immunity only applied to "official capacity," and a prosecutor was amenable to suit in

his "individual capacity," it would completely defeat the policies served by the immunity doctrine).

**{¶14}** Mr. Sullivan and Mr. O'Malley's assignment of error is sustained.

III.

**{¶15}** Mr. Sullivan and Mr. O'Malley's assignment of error is sustained. The order of the Lorain County Court of Common Pleas denying their motion to dismiss is hereby reversed and remanded.

Judgment reversed
and remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee Jaleh Presutto.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
HENSAL, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

MICHAEL C. O'MALLEY, Prosecuting Attorney, and BRIAN R. GUTKOSKI, Assistant Prosecuting Attorney, for Appellant.

DAVID J. MATTY, Attorney at Law, for Appellee.

MARCUS SIDOTI, Attorney at Law, for Appellee.

CLIFFORD MASCH, Attorney at Law, for Appellee.

JAMES S. CASEY, Attorney at Law, for Appellee.