**Margaret E. ROSE, Plaintiff,**

v.

**KENYON COLLEGE, et al., Defendants.**

Nos. C2–00–1299, C2–00–1378.

United States District Court,
S.D. Ohio,
Eastern Division.

March 29, 2002.

*OPINION AND ORDER*

MARBLEY, District Judge.

On November 6, 2000, plaintiff Margaret E. Rose ("Rose") filed suit (Case No. 00–1299) against Kenyon College ("Kenyon"), Ivan Isreal ("Isreal"), and five John Doe defendants based on an alleged sexual assault by Isreal occurring on Kenyon's campus while Rose was a student there. On December 4, 2000, Isreal filed suit (Case No. 00–1378) against Rose, Kenyon, and Kenyon employees Doug Zipp ("Zipp"), Robert Oden ("Oden"), Don Omahan ("Omahan"), and one or more unspecified John Does (collectively "Kenyon Defendants"), advancing claims based on the allegation that he was falsely accused and improperly dismissed from Kenyon. The cases were consolidated on May 22, 2001. Rose has moved for reconsideration of this order (Case No. 00–1299 file doc. # 19), and both Rose and Kenyon have moved for dismissal of Isreal's suit (Case No. 00–1299 file doc. # 25; Case No. 00–1378 file docs. # 7 and # 8). A number of motions related to discovery are also pending. All of these motions are now ripe for decision. For the following reasons, Rose's motion for reconsideration will be denied, Rose's motion to dismiss will be granted, and Kenyon's motion to dismiss will be granted in part and denied in part.

## I.

The Court turns first to Rose's and Kenyon's procedural arguments made in support of their motions to dismiss Isreal's complaint. These arguments are premised on two related theories. First, Rose and Kenyon contend that they were never properly served with process as required by Fed.R.Civ.P. 4 and that, as a result, the claims against them must be dismissed either because they have never been made

parties to that case, or because Fed. R.Civ.P. 4(m) mandates dismissal. Rose also contends in her motion for reconsideration that this shortcoming necessarily precluded consolidation of the two cases. The Court finds both contentions misplaced.

In response to Rose's lawsuit, Isreal filed case No. 00–1378 in this Court on December 4, 2000, raising his own claims against Rose, Kenyon, and various Kenyon employees. Noting that Isreal appeared to have failed to serve Rose in compliance with Fed.R.Civ.P. 4, Magistrate Judge King issued a show cause order on April 18, 2001 requiring Isreal to show cause within eleven days why the action should not be dismissed. Isreal filed a response on May 1, 2001 detailing his efforts to obtain service on the defendants. After completing six summonses, he alleges that he was told that he could perfect service himself as long as someone else delivered the summons. He claims to have both mailed and hand delivered his complaint to Joel H. Mirman, Rose's counsel, and Richard Lovering, the Kenyon Defendants' counsel. He also attempted to serve Kenyon by leaving a copy of the summons with Jodi Pursel, a secretary in the President's office. Isreal notes that although the opposing parties had introduced the issue of deficiency of service, the potential for consolidation was raised during the April 17, 2001 pretrial conference in Case No. 00–1299, one day after the show cause order issued in 00–1378. Based on the decision of the Court to consolidate the cases, he has made no further attempts at service of these parties. In the event that the Court should find the service requirement unsatisfied, Isreal requests additional time to perfect service on Rose and Kenyon.

Mirman, one of Rose's attorneys, concedes that Isreal or his agent attempted to serve him with a copy of the complaint on December 5, 2000. Mirman, however, refused service, claiming that he was "*not* authorized to accept service on behalf of anyone." Isreal's Show Cause Motion, Ex. A at 1 (emphasis in original). Kenyon does not dispute that Lovering, one of its attorneys, also was served with a complaint and summons, but it argues that service was not properly effected because a copy of the summons and complaint was not delivered "to an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" as required by Fed. R.Civ.P. 4(h). Kenyon further notes that "[n]o attempt at service was made on the duly appointed statutory agent for the college." Kenyon Defendants' Motion to Dismiss (Case No. 00–1378 file doc. # 7) at 12.

█ The Court recognizes Rose and Kenyon's contention that, in general, actual knowledge of a lawsuit will not suffice to substitute for proper service of process, *LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 322 (6th Cir.1999), and that actual appointment to receive process is generally necessary. *Whisman v. Robbins*, 712 F.Supp. 632 (S.D.Ohio.1988). It is uncontested, however, that Isreal's claims "arise out of the same facts" as do Rose's claims in the earlier-filed case. Kenyon Defendants' Motion to Dismiss at 3. Accordingly, the claims Isreal raises in Case No. 00–1378 are properly considered compulsory counterclaims to Rose's claims in Case No. 00–1299 under Fed.R.Civ.P. 13(a), and they would also be proper cross-claims against Kenyon. At least in the first filed case, all the relevant parties—Rose, Kenyon, and Isreal—are properly before the Court, and it may therefore decide all claims arising from the same facts and circumstances at issue. *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir.1976). Under Fed.R.Civ.P. 13(f), the Court has discretion to allow a defendant to plead an

omitted counterclaim or defense at any time "when justice so requires." *See Lemelson v. Synergistics Research Corp.*, 669 F.Supp. 642 (D.C.N.Y.1987). Following Fed.R.Civ.P. 1, which requires the Court to construe the applicable Rules of Procedure "to secure the just, speedy, and inexpensive determination of every action," the Court chooses to grant Isreal leave to amend his answer to include the counterclaims and cross-claims advanced in the complaint he filed in Case No. C–2–00–1378. This approach seems particularly warranted when some of the proposed claims are compulsory counterclaims. Since Rose and Kenyon have alternatively moved to dismiss Isreal's claims on the merits; they are not prejudiced by this approach. It also moots both the defendants' arguments concerning the timeliness of service of process and Isreal's motion for an extension of time to make service, and allows the Court to proceed directly to the substantive arguments advanced in support of dismissal.

## II.

Before turning to that inquiry, the Court will resolve one additional procedural issue. Isreal has moved to have all of this Court's orders "handed down ... during the summer months to present" vacated. His sole ground for this is that the Court noted in its memorandum of the first pretrial conference in Case No. 00–1299 dated April 23, 2000, that "Isreal [would] not be in Central Ohio during the summer months." *Id.* at 2. Because of this shortcoming, he claims that he was not provided the opportunity to review any of the papers submitted during this time period.

Isreal has not identified any particular order issued by the Court in which he claims he was prejudiced by this shortcoming. The Court issued no orders in either case between May 22, 2001 and September 21, 2001. Thus, regardless of whether Isreal is entitled to a hiatus in litigation activity when he is out of town, his motion does not request any specific relief, and it will be denied.

## III.

Both Rose and Kenyon have moved for dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). In evaluating these motions, the Court must focus solely upon the complaint, which "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations and citation omitted); see also *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir.1983). "[The] court must treat as true all of the well-pleaded allegations of the complaint," and "[a]ll allegations must be construed in the light most favorable to the plaintiff." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir.1996) (citation omitted); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "In order for a dismissal to be proper, it must appear beyond doubt that the plaintiff would not be able to recover under any set of facts that could be presented consistent with the allegation of the complaint." *Id.;* see also *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983), *cert. denied*, 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The Court also notes its obligation to construe *pro se* complaints liberally in favor of the pro se party. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). It is with these standards in mind that the Court considers the defen-

dants' motion to dismiss Isreal's counter-claims.

### IV.

Isreal's complaint is not a model of clarity. He appears to have adopted entire portions of Rose's complaint as his own, and includes as part of the complaint copies of additional documents, such as the subpoena he received in Case No. 00–1299, portions of Rose's handwritten recollection of the events in question, and excerpts from Rose's medical records. The Court, based on the certain undisputed facts regarding the events at issue, will construe Isreal's complaint in light of certain additional factual information, such as dates provided in Rose's complaint or in other filings of the parties. The inclusion of this information is not prejudicial to Isreal's claims but simply allows the Court to recite the facts in a more comprehensible fashion. The relevant facts so derived may be fairly summarized as follows.

Isreal, an African–American student-athlete at Kenyon during the time of the alleged incident, was recruited by Kenyon after attending one of its summer programs. He decided to attend the school based upon his favorable summer experience and the opportunities for academic and cultural enrichment it offered him, as well as an opportunity for fair and equal treatment. As a freshman, he joined a fraternity consisting largely or solely of African–American students. He alleges that during his time at the school, one of his fraternity brothers was accused of sexually assaulting a freshman and was immediately expelled from campus, and that he heard of two other African–American students experiencing similar treatment during his sophomore year.

On the evening of November 6, 1999, Isreal attended a party at the dorm of one of his friends. While there, he met Rose, a Kenyon freshman, and the two of them danced and conversed. Rose had consumed some undetermined quantity of alcohol. At some point, Isreal excused himself to visit his friend's dorm room, and Rose allegedly asked if she could accompany him. Isreal received no response at his friend's door, and Isreal and Rose sat down in front of the door. Isreal alleges they began kissing, but the area was not particularly private. Noticing a nearby bathroom, he proceeded to "walk into the bathroom" and "Margaret followed." Complaint at 4. They continued kissing and fondling while making efforts to remain quiet because they were still within earshot of students in a nearby lounge. After Isreal inquired as to whether Rose was currently on contraception and she responded that she was, they engaged in vaginal and oral sex. Afterwards, Rose gave Isreal her room number and telephone number, and the two peacefully parted company at some point in the evening.

Rose's allegations regarding the events in question in Case No. 00–1299 are fundamentally different from Isreal's. She contends that he sexually assaulted her on the night in question. Although those allegations are not germane to the instant motions to dismiss, Rose apparently determined, on November 7, 2000, that she required medical attention as a result of the assault. She contacted campus security and was taken to the Kenyon Health Center. She was treated and counseled as to the events at issue, and ultimately decided to press charges against Isreal for assault.

Isreal had no further contact with Rose and was unaware of any of these subsequent events until he was notified by Zipp on November 18, 1999, that Rose was accusing him of sexually assaulting her on the night in question. He was told to leave his dorm room by 6:00 p.m. that day.

Although Isreal does not say so in his complaint, another unidentified student had also apparently levied similar charges against Isreal based on an unrelated incident. Over the next week, Zipp communicated with Isreal or his father numerous times to inform them of the hearing schedule and process Kenyon was arranging to evaluate Rose's charges and determine what action on behalf of the university was appropriate.

The proposed process changed numerous times in response to Isreal's complaints. Initially, on November 22, 1999, Zipp told Isreal that Kenyon would conduct hearings on both incidents together because they involved Isreal's "ongoing behavior." When Isreal complained that such a hearing would prejudice him and that Kenyon had already violated his rights by sending notices to each party informing them of the other's charges, Kenyon decided that it would conduct separate hearings on the same day but would render a decision on both at the same time. This approach was again modified on November 29, 1999, to conduct the hearings and render decisions on each separately. On December 1, 1999, a hearing was held on the other student's charges. Isreal claims to have been found not guilty on all counts presented at that hearing.

Kenyon conducted the hearing involving Rose's complaint on December 3, 1999. Isreal contends that Kenyon, despite its declaration in the student handbook that all such accusations be proved beyond a reasonable doubt, refused to treat Rose and Isreal as equal throughout the complaint resolution process. Although Isreal attempted to prepare for the hearing, he alleges that Kenyon interfered with this right to a fair and impartial hearing in at least two ways. First, his eviction from campus prevented him from gathering "witnesses and dates from students and faculty" prior to the hearing. Complaint at 5. Second, Zipp acted to frustrate his preparation in at least one way by adding Dr. Schermer, the physician who treated Rose after the alleged assault, as a witness without notifying him, preventing him from preparing questions.

During the hearing itself, Isreal claims that the jury members were "consistently rude" to him and prevented him from establishing his defense. Complaint at 5. He was unable to study the documentation submitted by Dr. Schermer, and the jury refused his request to strike either the documentation or his testimony despite the fact that Isreal claims it was inconclusive. He claims that Rose's testimony was confused and failed to provide crucial information, whereas he presented the only witness with direct knowledge about the incidents in question. He claims that the other accuser was present in Rose's hearing, as were Rose's parents, despite the fact that his own parents were refused admission. Finally, he claims that the jury prevented him from asking direct questions of Rose during the hearing. He claims that Rose's false allegations were an attempt to compensate for a retrospectively poor decision to engage in sexual activity with him, an allegation he claims is supported by her past medical history of eating disorders and other evidence of emotional problems. Ultimately, he was found guilty of assault. He was immediately expelled from Kenyon as a result, and his appeal to Kenyon's president was rejected the day after the hearing.

Isreal alleges that the treatment he received is representative of how African–American students at Kenyon have been treated in similar situations. He claims that Kenyon has "a history of accusing and expelling black males in an unacceptable ratio to those of any other ethnicity." Complaint at 5. As evidence, he claims that

four African–American males, including himself, had been expelled within one year on similar charges based solely on the word of their white accusers, and that these accusations were "the only [such] accusations on the entire campus." Complaint at 5.

Isreal claims to have suffered "serious emotional and mental trauma" as a result of these events, causing him to "terminate all physical exercise, have deep bouts with depression, sleeplessness, and morbidity" and to lose a year of school credit. Complaint at 5–6. He raises claims under Title VII, 42 U.S.C. § 2000e and Title IX, 20 U.S.C. § 1681(a). He also raises unspecified constitutional claims under 42 U.S.C. §§ 1983, 1985(2), 1985(3), and § 1988. He further advances the state law claims of breach of contract, detrimental reliance, and defamation. He demands compensatory and punitive damages in excess of $80,000, costs, and reinstatement as a student at Kenyon.

### V.

Rose and Kenyon have moved to dismiss all of Isreal's claims on the ground that they fail to articulate any cognizable claim. Isreal has failed to respond substantively to the motions to dismiss. The Court will address each claim in turn.

#### A. Title VII and IX Claims

Kenyon and the individual defendants contend that Isreal fails to state any valid Title VII or Title IX claim as a matter of law. The Court finds the individual Defendants' contentions well-founded, and Kenyon's Title VII position valid, but disagrees with Kenyon's Title IX argument.

Title IX, 20 U.S.C. § 1681(a), provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." Accordingly, "Title IX proscribes gender discrimination [against a program's employees and students] in education programs or activities receiving federal financial assistance." *North Haven Board of Education v. Bell,* 456 U.S. 512, 514, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).

As a threshold consideration, neither Rose nor any of the individual defendants can be sued under Title IX. *Soper v. Hoben,* 195 F.3d 845, 854 (6th Cir.1999). Israel alleges that Kenyon receives federal funds, thereby satisfying the threshold requirement of the statute. *See Soper,* 195 F.3d at 854. The question for this Court is whether Isreal's complaint is sufficient to state a Title IX claim against Kenyon.

It is beyond responsible debate that Rule 8 requires notice pleading. The purpose of notice pleading is simply to provide the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which that claim rests. Indeed, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Against this backdrop Isreal's claims are to be considered. Construing it liberally, as the Court must, *see Haines,* 404 U.S. at 521, 92 S.Ct. 594, Israel's Complaint states a claim pursuant to *Davis v. Monroe County Bd. of Educ.,* 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), which Isreal's Complaint specifically references. In *Davis,* the Supreme Court held that a plaintiff may bring a claim under Title IX based on student-on-student sexual harassment. Although Isreal does not set forth with specificity how he was sexually harassed, he does plead sexual harassment. Notwithstanding the paucity of facts, under

*Conley,* it does not appear beyond doubt that he can prove no set of facts to support his sexual harassment claim. Therefore, the Court denies Kenyon College's Motion to Dismiss Isreal's Title IX claim.

■ Isreal's invocation of Title VII is inappropriate in this case. Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). Accordingly, Title VII provides for a private right of action by employees against employers on the grounds of unlawful discrimination in employment. *See, e.g., Braithwaite v. Timken Co.,* 258 F.3d 488 (6th Cir.2001); *Mitchell v. Toledo Hosp.,* 964 F.2d 577 (6th Cir.1992). Again, individual defendants cannot be held liable under Title VII in any instance, *Wathen v. General Electric Co.,* 115 F.3d 400, 404–05 (6th Cir.1997), and Isreal does not claim to have been an employee of Kenyon or any of the other defendants. Further, he has not alleged that he filed a charge of discrimination with the EEOC or that he received a right-to-sue letter, both of which are required before filing suit under Title VII. Accordingly, Isreal's Title VII claim and his Title IX claim, as it applies to the individual Defendants, fail as a matter of law.

### B. § 1983 Civil Rights Claims

■ Isreal also attempts to raise claims pursuant to 42 U.S.C. §§ 1983, 1985(2), 1986, and 1988 for unspecified constitutional violations.[1] None of these claims have any legal foundation. Israel appears to claim some sort of due process violation in connection with his hearing at Kenyon, as well as some unspecified discrimination claim based on his allegation that only African–American males have been expelled from Kenyon during the last two years for sexual assault allegations. However, in order to state a *prima facie* case under § 1983, a plaintiff must satisfy two threshold requirements: "(1) [that] the conduct complained of was committed by a person acting under color of state law; and (2) [that] this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Isreal has conceded, in his complaint, that Kenyon is not a state actor, and he makes no allegations or pleads any facts that any of the other individual defendants acted under order of state law. Although a private entity may be held subject to constitutional standards under § 1983 when its actions are deemed to be in concert with state actors and, accordingly, attributed to the state, *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), Isreal has not alleged any facts which might make Kenyon liable as a state actor under any of the recognized theories of "state action." *See, e.g., Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992). Accordingly, Isreal's § 1983 claims fail a matter of law. *Simescu v. Emmet County Dep't of Soc. Services,* 942 F.2d 372, 375 (6th Cir.1991).

■ Isreal's claims under § 1985(2) and (3) and § 1986 suffer from similar shortcomings. 42 U.S.C. § 1985(2) pro-

---

1. Interestingly, Plaintiff has not alleged a claim under § 42 U.S.C. § 1981, which may be the only statute under which Plaintiff's civil rights claim would survive. Even under the liberal standards of construction of Plain-tiff's pro se complaint, however, this Court is not permitted to plead Plaintiff's case nor engage in legal counseling. The Court does not, therefore, decide Plaintiff's rights under § 1981 since Plaintiff did not invoke it.

vides for a private cause of action against individuals who act, by "force, intimidation, or threat" to obstruct justice or intimidate a party or witness to testify truthfully "in any court of the United States." Isreal has not alleged any facts within which the purview of this statute. 42 U.S.C. § 1985(3) provides a private cause of action against those who conspire to "depriv[e], either directly or indirectly, any class of persons of the equal protections of the laws." The Supreme Court has held that § 1985(3) applies to conspiracies where the plaintiff establishes "some racial, or otherwise perhaps class-based, invidiously discriminatory animus." *United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *see also Browder v. Tipton*, 630 F.2d 1149 (6th Cir.1980). Although Isreal does allege that Kenyon has engaged in a practice of expelling African–American students when they are accused of sexual misconduct, he makes no allegation that Rose or any of the other female claimants are or were involved in any such conspiracy. In fact, he specifically states that Rose's only reason for bringing the false charges was that "he didn't call her back" and because she was ashamed to admit that she had sexual intercourse with someone she just met. Complaint (Case No. 00–1378 file doc. # 1) at ¶ 35. The only possible reading of his complaint is that the Kenyon Defendants somehow conspired, in the performance of his hearing and advancing the charges against him and other African–American students, to expel him from the school. This claim, however, is fatally flawed because the Sixth Circuit has determined that a corporation cannot conspire with its own agents or employees. *Johnson v. Hills & Dales General Hosp.*, 40 F.3d 837, 839–840 (6th Cir.1994); *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. of Educ.*, 926 F.2d 505, 509–510 (6th Cir.

1991); *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir.1984). As a result, plaintiff's § 1985(3) claim also fails as a matter of law. Furthermore, because the § 1986 claim is dependent upon establishing a § 1985(3) violation, plaintiffs' § 1986 claim necessarily fails. *Bartell*, 215 F.3d at 560; *Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 994 (6th Cir.1994) (holding that there can be no violation of § 1986 without a predicate violation of § 1985); *Browder*, 630 F.2d at 1155 (same).

■ The dismissal of Isreal's claims under §§ 1983, 1985, and 1986 also requires dismissal of his § 1988 claims. 42 U.S.C. § 1988 does not provide for a separate cause of action, but merely provides for attorneys' and experts' fees in civil rights cases as well as the application of common law in civil rights proceedings brought under other statutes.

### C. Remaining Claims

Isreal also pleads a number of additional state law claims. Most of the theories of recovery he cites have no underlying basis in Isreal's factual allegations. For example, in his breach of contract claim, Isreal fails to identify or implicate any contract, either express or implied, that any of the moving parties breached during the events of which he complains. His detrimental reliance claim has no basis in the facts pled, and Isreal has not attempted to identify the basis for his claim in response to Kenyon's motion to dismiss. Accordingly, these two claims will be dismissed.

Isreal also raises a defamation claim. The total description of this claim consists of three words: "defamation a[sic] character." The only publications mentioned in the complaint which are even arguably attributable to the Kenyon Defendants are the hearing notices mailed to the parties

involved in the two complaints against Isreal. Isreal does not allege that Rose communicated these allegations to any private party independent of her attempt to seek medical assistance, counseling, or prosecution for the alleged attack. These types of statements may well be immune from defamation claims to the extent that they were made during or relevant to judicial proceedings. *See, e.g., Willitzer v. McCloud,* 6 Ohio St.3d 447, 448, 453 N.E.2d 693 (1983); *Carlton v. Davisson,* 104 Ohio App.3d 636, 652, 662 N.E.2d 1112 (6th Dist.1995). In the absence of any more specific allegations supporting this claim, however, it is simply too vague to survive a motion to dismiss.

## VI.

The Court now turns to several other non-dispositive matters. Pursuant to Fed. R.Civ.P. 26(c), Kenyon has moved the Court for a protective order permitting it to withhold information protected by the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g *et seq.* Rose has sought to compel the release of such information but has also requested extension of the discovery and dispositive motion deadlines by ninety days to give the parties time to make a good-faith effort to resolve this and other outstanding discovery issues (Case No. 00–1299 file doc. # 46). Kenyon has not opposed this motion. Because the entire scheme of discovery under the Federal Rules of Civil Procedure encourages the parties to resolve these issues amicably without the aid of the Court, the Court finds that Rose's request is well-founded and will be granted. The deadline to complete discovery is hereby extended to April 30, 2002, and the dispositive motion deadline date is extended until May 31, 2002. Correspondingly, Kenyon's motion for a protective order will be denied without prejudice. Should the parties be unable to resolve this issue,

Kenyon may renew its motion in the future.

## VII.

Kenyon has also moved to introduce evidence regarding Rose's sexual activity on the night in question into the record (Case No. 00–1299 file doc. # 37). Rose has opposed this motion on the grounds that the introduction of this evidence is prohibited by Fed.R.Evid. 412. The Court declines the opportunity to decide this issue at this point in the litigation. Accordingly, Kenyon's motion to admit this information will be denied, but the parties may reintroduce this issue by way of an appropriate motion *in limine* closer to trial.

## VIII.

Rose and Kenyon have moved for sanctions against Isreal premised on his failure to cooperate with discovery requests and efforts in the consolidated cases. The record reflects Kenyon noticed him for a deposition on three different occasions, but he failed to attend all three. He provided the parties no notice that he would be unable to attend the first scheduled deposition. As to the latter two, his father called just prior to the scheduled depositions to notify the other parties of Isreal's intent not to attend. Isreal contends in his memorandum in opposition that he notified the parties during the pretrial that he would be unavailable to sit for a deposition in July, and he argues that the opposing parties failed to coordinate these deposition times in advance.

The defendants request that the Court, pursuant to Fed.R.Civ.P. 37(d), dismiss his claims. Because all of Isreal's affirmative claims are being dismissed on substantive grounds, this part of the motion is moot. Rose further requests that the Court deem all her claims against Isreal admitted. While the Court does not feel that this is an appropriate sanction at this juncture, it

cannot countenance Isreal's disregard of valid deposition notices. The Fed.R.Civ.P. set forth the proper way in which to object to a deposition notice and to seek relief from the obligation to attend a deposition. Isreal has not followed these procedures. His *pro se* status does not excuse his behavior. If Rose or Kenyon wish to depose Isreal, they shall notice him for a deposition, and he is ordered to attend that deposition. If he does not, the Court may well strike his answer and enter a default against him.

## IX.

For the foregoing reasons, Rose and Kenyon's motions for sanctions (Case No. 1299 file docs. # 32, 53, and 54; Case No. 00–1378 file docs. # 11, 27, and 28) are DENIED. Rose's motion for reconsideration (Case No. 00–1299 file doc. # 19) is DENIED. Kenyon's motions for a protective order and to introduce evidence (Case No. 00–1299 file docs. # 37 and 39; Case No. 00–1378 file docs. # 14 and # 16) are DENIED. Rose's motion to extend discovery and dispositive motions deadlines (Case No. 00–1299 file doc. # 46) is GRANTED. Isreal's motion for appointment of counsel is being taken under advisement and will be decided forthwith. Isreal's motion to vacate (Case No. 1378 file doc. # 12) is DENIED. Rose's motion to dismiss (Case No. 00–1299 file doc. # 25; Case No. 00–1378 file doc. # 8) is GRANTED. Kenyon's motion to dismiss (Case No. 00–1378 file doc. # 7) is DENIED IN PART and GRANTED IN PART. All of Isreal's claims in Case No. 00–1378, also deemed to be counterclaims in Case No. C–2–00–1299, except his Title IX claim against Kenyon, are DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**