TRANSKY et al., Appellants,

v.

OHIO CIVIL RIGHTS COMMISSION et al., Appellees.

[Cite as *Transky v. Ohio Civ. Rights Comm.*, 193 Ohio App.3d 354, 2011-Ohio-1865.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2010–L–038.

Decided April 15, 2011.

356

Tarin S. Hale, for appellants.

Michael DeWine, Attorney General, and Patrick M. Dull, Assistant Attorney General, for appellees.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Gregg Transky and others, appeal from the Lake County Court of Common Pleas judgment dismissing their complaint for failure to state a claim upon which relief can be granted. For the reasons discussed in this opinion, we affirm the judgment of the trial court.

{¶ 2} Appellants own a home that they rent to the public. In July 2008, the Fair Housing Resource Center ("FHRC") of Painesville, Ohio, conducted an "audit" of appellants' rental policies and practices. FHRC sent a prospective renter, designated as a "tester," who purportedly required the assistance of an animal. When appellants requested an additional $100 security deposit for the assistive animal, FHRC filed a housing-discrimination charge against appellants with appellee Ohio Civil Rights Commission ("OCRC").

{¶ 3} FHRC's charge alleged that during systematic testing, a disabled tester received less favorable treatment when appellants attempted to charge the additional security deposit for the assistive animal. FHRC also alleged that appellants' rental application required the name of each occupant and that potential occupant's relationship to the applicant, including children.

{¶ 4} In October 2008, OCRC notified appellants of the housing-discrimination charge. OCRC commenced an investigation, after which it notified appellants that it possessed probable cause to support the charge. After efforts at conciliation failed, OCRC prepared an administrative complaint, alleging violations of R.C. 4112.02(H)(1), (4), (7), and (19). The complaint sought an order requiring appellants to cease and desist, not to charge for animals needed as an accommodation for individuals with a disability, to modify their rental application form to eliminate inquiries directed toward the presence of children, to attend training on Ohio laws against discrimination in housing, to prominently display the equal-housing symbol in their rental applications, advertisements, and lease agreement, to pay damages to FHRC, ; and to pay attorney fees and punitive damages.

{¶ 5} Appellants were subsequently provided with a notice of hearing and right of election. The notice informed appellants that they had a right to proceed with the administrative-hearing process under R.C. 4112.05 or elect to have the charges addressed via a civil action. As no civil action was filed, appellants apparently elected to move forward through the administrative-hearing process. After further discussion, OCRC attempted to resolve the charge by proposing that appellants, inter alia, (1) enroll in fair-housing training, (2) establish a written rental policy complying with R.C. Chapter 4112, and (3) pay a fine of $3,500 to FHRC. The attempt at conciliation failed, and on October 28, 2009, appellants filed the underlying complaint seeking a declaratory judgment regarding the constitutionality of R.C. Chapter 4112, injunctive relief, and a finding that their civil rights were violated.

{¶ 6} In particular, appellants' complaint contained five counts: count one sought a declaration that various sections of R.C. 4112 were both facially unconstitutional and unconstitutional as applied to appellants; count two sought a declaration that OCRC lacked jurisdiction to proceed under R.C. 4112.05; count three alleged that the named defendants violated appellants' civil rights under Section 1983, Title 42, U.S.Code; count four alleged that the named defendants violated appellants' civil rights under Section 1985, Title 42, U.S.Code; and count five alleged that the named defendants intentionally inflicted serious emotional distress on appellants.

{¶ 7} On November 27, 2009, OCRC filed a motion to dismiss pursuant to Civ.R. 12(B)(1) and 12(B)(6). In support, OCRC alleged that the trial court lacked jurisdiction to consider the complaint, as it represented an improper attempt to bypass the administrative hearing and appeals process. OCRC further argued that appellants had an adequate remedy at law and thus were not entitled to injunctive relief. Finally, OCRC asserted that the individual defendants were entitled to absolute immunity, as the conduct at issue was a result of their work as agency officials.

{¶ 8} Appellants filed a memorandum in opposition to OCRC's motion to dismiss, and OCRC filed a response to appellant's memorandum. On March 23, 2010, after considering the parties' positions, the trial court granted OCRC's motion to dismiss. With respect to counts one and two, the court determined, "[T]he administrative process is an equally serviceable remedy [and therefore] declaratory judgment is not available." The court determined that it lacked jurisdiction to entertain count five because R.C. 2743.02(F) requires the Court of Claims to render a determination that a state employee is not entitled to immunity before a court of general jurisdiction considers an intentional-tort claim against that employee. The court also determined that appellants had failed to state a claim upon which relief could be granted in counts three and four. In

support, the court ruled that each defendant was entitled to absolute immunity, which conclusively barred the causes of action alleged in these counts. Finally, the court determined appellants' complaint represented an attempt to bypass a special statutory proceeding that, in itself, affords appellants an adequate remedy at law. As a result, the court concluded that appellants' complaint failed to state a claim.

{¶ 9} Appellants now appeal, assigning two errors for our review. Appellants' first assignment of error provides:

{¶ 10} "The trial court erred to the prejudice of plaintiffs-appellants by granting defendants-appellees' motion to dismiss based on the application of absolute immunity to the conduct of the individual defendants-appellees Cordray, Tobocman, Wilkerson, Choi and Martin."

{¶ 11} An appellate court reviews a trial court's dismissal pursuant to Civ.R. 12(B)(6) de novo. *Goss v. Kmart Corp.*, 11th Dist. No. 2006–T–0117, 2007-Ohio-3200, 2007 WL 1810523, at ¶ 17. Generally, "[a] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378. In conducting a de novo review, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the nonmoving party's favor. *Concord Health Care, Inc. v. Schroeder*, 177 Ohio App.3d 228, 2008-Ohio-3392, 894 N.E.2d 351, at ¶ 9. Materials like exhibits incorporated in a complaint may be considered as part of the complaint for purposes of resolving a Civ.R. 12(B)(6) motion to dismiss. *State ex rel. Keller* (1999), 85 Ohio St.3d 279, 281, 707 N.E.2d 931; see also *State ex rel. Crabtree v. Franklin Co. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281. If, after considering the allegations and materials, there is a set of facts consistent with the plaintiff's complaint that would permit the complainant to recover, a trial court may not grant a defendant's motion to dismiss. *Goss* at ¶ 20. Therefore, our task is to determine whether there is a set of facts that would permit recovery. Id.

{¶ 12} Under their first assignment of error, appellants argue that the trial court erred in granting appellees' motion to dismiss counts three and four because their complaint contained factual allegations that render application of absolute immunity improper as a matter of law. Appellants first contend that the allegations in their complaint create a question as to whether former Ohio Attorney General Richard Cordray and Principal Senior Assistant Attorney General Marilyn Tobocman were functioning in a quasi-judicial capacity or merely in an administrative or investigative capacity in moving forward with the complaint filed by OCRC. If they were acting in the latter capacity, appellants claim that the officials are entitled only to qualified immunity. Under those

circumstances, their complaint would set forth facts creating a potential for recovery. Thus, appellants maintain that the trial court erred in dismissing their civil causes of action. We disagree.

{¶ 13} It is well settled that prosecutors are considered quasi-judicial officers. *Willitzer v. McCloud* (1983), 6 Ohio St.3d 447, 448, 6 OBR 489, 453 N.E.2d 693; see also *Imbler v. Pachtman* (1976), 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128. In executing duties "intimately associated" with the judicial phase of a particular proceeding, e.g., initiating a prosecution, a prosecutor is entitled to absolute immunity from civil liability. Id. at 424, 96 S.Ct. 984, 47 L.Ed.2d 128 (a prosecutor was absolutely immune from liability under Section 1983, Title 42, U.S.Code where conduct at issue was related to the prosecution of a murder case). Affording a prosecutor complete immunity in these situations is premised upon the public's compelling interest in protecting the integrity of the judicial process. *Willitzer* at 448; see also *Imbler* at 427. Without full immunity, a prosecutor would be discouraged from the vigorous and fearless performance of his or her duties that is necessary to the proper function of the judicial system at large. Id. at 428. Thus, although a genuinely wronged defendant (or respondent) may be without a civil remedy, " 'it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.' " Id., quoting *Gregoire v. Biddle* (C.A.2, 1949), 177 F.2d 579, 581.

{¶ 14} With these points in mind, it is also well settled that a prosecutor who is engaged in merely investigative or administrative functions is not entitled to absolute immunity, but merely qualified immunity. *Willitzer*, 6 Ohio St.3d at 448, 6 OBR 489, 453 N.E.2d 693. To determine whether a prosecutor's acts are quasi-judicial as opposed to investigative or administrative, courts apply a functional analysis of the activities at issue. Id.

{¶ 15} Here, the attorneys in the attorney general's office named as defendants were engaged to prosecute an administrative complaint filed by OCRC. Administrative proceedings are considered quasi-judicial in nature. Accordingly, the question is whether the prosecutors' conduct was "intimately associated" with the quasi-judicial phase of the proceedings or merely ancillary to that phase. Based upon the allegations and other materials included in appellants' complaint, we hold that the trial court did not err in concluding that those attorneys named in the complaint were entitled to absolute immunity.

{¶ 16} Nothing in the complaint or the attached exhibits indicates that the attorney general's office engaged in any conduct that could be construed as administrative or investigative. Indeed, appellants' complaint indicates that Tobocman, in her capacity as the principal senior attorney general for the civil

rights section for the Ohio attorney general, was involved in attempting to resolve the case by offering appellants various conciliation options in lieu of moving forward with OCRC's complaint. Although appellants assert that Tobocman's proposal was beyond the scope of her duties as a prosecutor, she, as the lawyer for OCRC, had the legal authority to negotiate a conciliation agreement at any time. See R.C. 4112.10 and Ohio Adm.Code 4112–3–10(B)(3). These negotiations, akin to plea negotiations in a criminal matter, are fundamentally and intimately part of an attorney general's role in prosecuting and disposing of an administrative complaint. Even accepting appellants' factual allegations as true, we hold that there is no set of facts that permits recovery against the named attorneys in this case. The trial court, therefore, did not err in concluding that these officials were absolutely immune as a matter of law.

{¶ 17} Next, appellants contend that appellees Delores Wilkerson, Iris Choi, and Desmond Martin, named defendants employed by OCRC, were not entitled to absolute immunity.

{¶ 18} In *Butz v. Economou* (1978), 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895, the Supreme Court of the United States compared administrative officers to prosecutors to the extent that they "initiate administrative proceedings against an individual or corporation * * * very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought." Id. at 515.

{¶ 19} Thus, the court determined that administrative officers "performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." Id. at 515.

{¶ 20} The allegations in the complaint are insufficient to support the legal conclusion that the administrative officers in question were functioning in this case in a manner akin to prosecutors. As a result, we cannot conclude from the face of the complaint that Wilkerson, Choi, and Martin are entitled to absolute immunity. Our analysis, however, does not end with this conclusion. Even though there is not enough information in the complaint to support the trial court's legal conclusion regarding absolute immunity, we nevertheless believe that the trial court did not err in dismissing appellants' cause of action against these officials under these circumstances.[1]

---

1. While agreeing with our conclusion that the complaint cannot support the trial court's conclusion that these defendants are entitled to absolute immunity, the dissent maintains that the analysis should cease and the matter be reversed. An appellate court, however, shall affirm a trial court's judgment that obtains the correct legal result even where that result is based upon an erroneous analysis. See, e.g., *Reynolds v. Budzik* (1999), 134 Ohio App.3d 844,

{¶ 21} Here, appellants' Section 1983 action appears to allege that defendants Wilkerson, Choi, and Martin violated their constitutional rights—presumably their rights to due process and equal protection—in the course of a malicious prosecution. In *Crawford v. Euclid Natl. Bank* (1985), 19 Ohio St.3d 135, 139, 19 OBR 341, 483 N.E.2d 1168, the Supreme Court of Ohio held that a plaintiff must satisfy four elements to establish a cause of action for malicious civil prosecution, to wit, "(1) malicious institution of prior proceedings against the plaintiff by defendant, * * * (2) lack of probable cause for the filing of the prior lawsuit, * * * (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of the prior proceedings."

{¶ 22} The record demonstrates that the administrative-hearing process had not yet commenced when the underlying complaint was filed. Consequently, even if appellants had alleged sufficient facts to meet elements (1), (2), and (4), they would be completely unable to demonstrate that the proceedings at the heart of the cause of action had terminated in their favor, as set forth in element (3). In essence, the malicious-prosecution claim is, at this point, premature. Because the action is not ripe for adjudication, we hold that the trial court did not err in concluding that appellants have failed to state a claim against Wilkerson, Choi, and Martin.

{¶ 23} Appellants also generically allege that these defendants violated Section 1985, Title 42, U.S.Code when they "individually and collectively conspired to deprive [appellants] equal protection of the law." Although Section 1985 provides three separate causes of action, subsection (3) appears to set forth the legal basis for the allegations in appellants' complaint. To wit, Section 1985(3) provides a private civil remedy for individuals injured by conspiracies to deprive them of their right to equal protection under the laws. See, e.g., *Roe v. Franklin Cty.* (1996), 109 Ohio App.3d 772, 781, 673 N.E.2d 172. The Supreme Court of the United States has held that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" to state a claim under Section 1985(3). *Bray v. Alexandria Women's Health Clinic* (1993), 506 U.S. 263, 268–269, 113 S.Ct. 753, 122 L.Ed.2d 34. This means that "a claimant must prove both membership in a protected class and discrimination on account of it" to sustain a claim under Section 1985(3). *Estate of Smithers v. Flint* (C.A.6, 2010), 602 F.3d 758, 765, citing *Bartell v. Lohiser* (C.A.6, 2000), 215 F.3d 550, 559.

---

846, 732 N.E.2d 485. As we hold that there are separate legal grounds to support the trial court's judgment, we are bound to affirm the decision.

{¶ 24} With these points in mind, federal courts have frequently underscored that Section 1985 was enacted to protect groups historically subject to pervasive discrimination. See, e.g., *Lake v. Arnold* (C.A.3, 1997), 112 F.3d 682, 687. Appellants' complaint, however, does not allege the protected class to which they are purportedly members. Assuming, for purposes of notice pleading, that appellants' class is defined as "owners of rental properties investigated by a governmental agency for discriminatory conduct," members of that class have not traditionally received special protection under the Fourteenth Amendment. As the complaint contains no operative facts to support an allegation that appellants are members of a protected class, their claims, as a matter of law, fall outside the ambit of Section 1985. The court, therefore, properly concluded, albeit for the wrong reasons, that the allegations must be dismissed.

{¶ 25} Finally, appellants' complaint alleged a claim for intentional infliction of emotional distress ("IIED") against Wilkerson, Choi, and Martin. Appellants based this claim upon the named defendants' alleged conspiracy to deprive them of their civil rights in the course of a malicious prosecution. Given the manner in which the case was pleaded, it therefore appears that the IIED claim is derivative. We therefore hold, similar to appellants' Section 1983 claim, that until they obtain a favorable outcome, this claim is premature, and the trial court did not err in dismissing this cause of action.

{¶ 26} Even though this court disagrees with the trial court's determination that Wilkerson, Choi, and Martin were entitled to absolute immunity, we nevertheless hold that appellants' complaint was properly dismissed pursuant to Civ.R. 12(B)(6).

{¶ 27} Appellants' first assignment of error is overruled. For their second assignment of error, appellants allege:

{¶ 28} "The trial court erred to the prejudice of plaintiffs-appellants by dismissing their claims for declaratory and injunctive relief based on its determination that plaintiffs-appellants have an adequate remedy at law and that the complaint is an attempt to bypass a special statutory proceeding."

{¶ 29} An appellate court reviews a trial court's dismissal of a declaratory action for an abuse of discretion. *Mid–American Fire & Cas. Co. v. Heasley,* 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, at ¶ 13–14 (rejecting the argument that the dismissal of a declaratory action should be reviewed de novo and "reaffirm[ing] that declaratory judgment actions are to be reviewed under an abuse-of-discretion standard"). A court abuses its discretion when its judgment is neither reasonable nor supported by the record. *LCD Videography, L.L.C. v. Finomore,* 11th Dist. No. 2009–L–147, 2010-Ohio-6571, 2010 WL 5622055, at ¶ 53.

█ {¶ 30} Under their second assignment of error, appellants first assert that the trial court erred in concluding they have an adequate remedy at law by which to pursue the constitutional claims under counts one and two. Appellants acknowledge that once the administrative-hearing process concludes, they possess the statutory right to appeal an adverse decision to the Lake County Court of Common Pleas pursuant to R.C. 4112.06. They argue, however, that judicial review under R.C. 4112.06 is limited to those issues adjudicated in the administrative proceedings. Because an administrative agency may not consider whether a statute is facially unconstitutional, they claim that the trial court was wrong in ruling that appellants possessed an adequate remedy at law.[2] We disagree.

█ {¶ 31} A common pleas court's appellate jurisdiction under R.C. 4112.06 is not restricted to a review of the commission's findings. To the contrary, other issues, including constitutional questions or the commission's jurisdiction to issue a complaint, may be raised on appeal. See, e.g., *South–Western City Schools Bd. of Edn. v. Kinney* (1986), 24 Ohio St.3d 184, 185, 24 OBR 414, 494 N.E.2d 1109; *State ex rel. E. Mfg. Corp. v. Ohio Civ. Rights Comm.* (1992), 63 Ohio St.3d 179, 180, 586 N.E.2d 105. Given these points, appellants' belief that a declaratory action is the only available legal avenue for resolving their constitutional arguments is inaccurate. Once the commission issues its determination on the merits of OCRC's complaint, appellants will therefore have an adequate legal remedy through an R.C. 4112.06 appeal.

█ {¶ 32} With these points in mind, we turn next to appellants' argument that the trial court erred in concluding that their complaint for declaratory judgment is merely an attempt to bypass the pending administrative process.

{¶ 33} In the trial court, appellees advanced the argument that the administrative process set forth under R.C. 4112.05 and 4112.06 is a "special statutory proceeding" that cannot be bypassed through the filing of a declaratory action. Appellees argued that R.C. 4112.05 sets forth the exclusive procedure for filing and processing discrimination complaints filed by OCRC, and R.C. 4112.06 provides the exclusive method by which the trial court can review OCRC actions. Although the trial court acknowledged that no court had explicitly held that the processes codified under R.C. 4112.05 and 4112.06 are "special statutory proceedings," the court determined that the statutory provisions are sufficiently similar

---

**2.** Although an administrative agency may not declare a statute unconstitutional on its face, it may consider whether a statute is unconstitutional "as applied" to a particular set of circumstances. See, e.g., *Reading v. Pub. Util. Comm.*, 109 Ohio St.3d 193, 2006-Ohio-2181, 846 N.E.2d 840, ¶ 16. Indeed, in order to preserve such an issue for review in an administrative appeal, that challenge must be raised before the board in order to develop a factual record. *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 520 N.E.2d 188, paragraph three of the syllabus.

to other administrative procedure statutes to warrant the designation. The trial court reasoned:

{¶ 34} "[I]t is clear that the General Assembly has designed a special statutory proceeding to investigate complaints of unlawful discriminatory practices. Once OCRC has determined that probable cause exists, R.C. 4112.05 provides for an adjudicatory hearing. Appeal to a court of common pleas * * * may be taken after the OCRC has rendered its decision. Since a specialized statutory remedy is available in the form of an adjudicatory hearing, a suit seeking a declaration of rights that would bypass, rather than supplement, the legislative scheme should not be allowed. * * * Merely because the administrative appeals process may take more time than plaintiffs desire is not a sufficient ground for bypassing the specialized procedure outlined in R.C. Chapter 4112."

{¶ 35} Initially, the trial court is correct that there is no case in Ohio holding that R.C. Chapter 4112 involves "special statutory proceedings." Appellants, however, do not dispute this designation. We shall nevertheless briefly examine the trial court's conclusion. R.C. Chapter 4112 appears to be the exclusive means by which OCRC can take action if allegations of discrimination are formally charged. To wit, when allegations are made, the statutory scheme specifically outlines all procedures required for processing a discrimination complaint, e.g., the filing of a charge of discrimination, the preliminary investigation phase, the actions available to OCRC, the issuance of complaint, the mechanics of a hearing, the order awarding relief or dismissing the complaint, and the process of appeal of an unfavorable ruling. Given these characteristics, we therefore hold the trial court drew a reasonable inference in treating the mechanisms codified under R.C. Chapter 4112. as "special statutory proceedings."

{¶ 36} That said, appellants contend that their complaint for declaratory relief was not an attempt to "bypass," but merely "overpass," the administrative process in furtherance of judicial economy. We believe that the phraseology used to describe appellants' motivations is irrelevant to the trial court's disposition of this issue. It is interesting, however, that appellants had the opportunity, through the election process, to have OCRC's complaint processed via civil action. Electing to have the complaint move through the court of common pleas would have been the most efficient means of litigating the constitutional claims set forth in their complaint for declaratory judgment. That they had the chance, but chose not to pursue this avenue, indicates that appellants' purported interest in judicial economy may not be entirely credible.

{¶ 37} Motivations aside, the trial court concluded that although the administrative process may take longer, any inconvenience that appellants might experience is insufficient to justify side-stepping the statutory procedures of R.C.

4112.05 and 4112.06 once they have been set in motion. We agree with the trial court's assessment.

{¶ 38} In *Whitehall v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 124, 656 N.E.2d 684, the Supreme Court of Ohio succinctly held an appellant's "claims that the OCRC proceeding and any appeal under R.C. 4112.06 to a common pleas court from any adverse OCRC decision would be inadequate due to time and expense are * * * without merit." Clearly, the fact that appellants may endure some delay and inconvenience in utilizing the procedures under R.C. 4112.05 and 4112.06 does not render the process legally inadequate.

{¶ 39} The Supreme Court of Ohio, citing multiple appellate court opinions, has observed:

{¶ 40} "[A]ctions for declaratory judgment and injunction are inappropriate where special statutory proceedings would be bypassed. *Dayton Street Transit Co. v. Dayton Power & Light Co.* (1937), 57 Ohio App. 299 [10 O.O. 500, 13 N.E.2d 923]; *State ex rel. Iris Sales Co. v. Voinovich* (1975), 43 Ohio App.2d 18 [72 O.O.2d 162, 332 N.E.2d 79]; *Wagner v. Krouse* (1983), 7 Ohio App.3d 378 [7 OBR 479, 455 N.E.2d 717]; *Beasley v. East Cleveland* (1984), 20 Ohio App.3d 370 [20 OBR 475, 486 N.E.2d 859]; and *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183 [530 N.E.2d 928]." *State ex rel. Albright v. Delaware Cty. Court of Common Pleas* (1991), 60 Ohio St.3d 40, 42, 572 N.E.2d 1387.

{¶ 41} In this case, each of appellants' arguments set forth in counts one and two are capable of being addressed in the administrative proceedings established by R.C. 4112.05 and 4112.06. The constitutional challenges as applied to appellants' circumstances may be raised at the administrative-hearing stage. If the allegations in OCRC's complaint are sustained, appellants can appeal to the court of common pleas. At that time, they may seek review of their as-applied challenge and also obtain a ruling on the constitutionality of the statutory scheme. Because appellants will have an opportunity to assert each argument in the administrative proceedings that have already been initiated, we agree that considering appellants' complaint for declaratory judgment and injunctive relief would be an inappropriate bypass of special statutory proceedings codified by the General Assembly.

{¶ 42} The Supreme Court has observed: " '[A] declaratory judgment is a remedy * * * and is to be granted where the court finds that speedy relief is necessary to the preservation of rights which might otherwise be impaired.' " *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1992), 63 Ohio St.3d 190, 193, 586 N.E.2d 114, quoting *Arbor Health Care Co. v. Jackson* (1987), 39 Ohio App.3d 183, 186, 530 N.E.2d 928. Further, "in the exercise of its discretion, the court may refuse a declaratory judgment when it deems that rights may be

fully protected through other available remedies." *Schaefer v. First Natl. Bank of Findlay* (1938), 134 Ohio St. 511, 518, 13 O.O. 129, 18 N.E.2d 263. That is, "declaratory relief is not available where another equally serviceable remedy has been provided." *Mack v. Ohio State Dental Bd.* (Mar. 30, 2001), 10th Dist. No. 00AP–578, 2001 WL 309115, citing *Swander Ditch Landowners' Assn. v. Joint Bd. of Huron & Seneca Cty. Commrs.* (1990), 51 Ohio St.3d 131, 554 N.E.2d 1324. " '[W]here an administrative practice requires a party to incur substantial expense to obtain an administrative determination of a question which, standing alone, would not require such expense, the administrative remedy to determine the question is not equally as serviceable as an action for a declaratory judgment.' " Id. at 135, quoting *Burt Realty Corp. v. Columbus* (1970), 21 Ohio St.2d 265, 50 O.O.2d 491, 257 N.E.2d 355, paragraph one of the syllabus.

{¶ 43} In this case, there were no allegations that the administrative process would be more economically burdensome than the collateral declaratory action. The trial court accordingly ruled that appellants "have an equally serviceable remedy in R.C. 4112.05 and R.C. 4112.06 and * * * the availability of a post hearing appeal is a complete, beneficial and speedy remedy." Given the circumstances of this case, we hold that the trial court did not abuse its discretion.

{¶ 44} One final point deserves attention. Appellants point out that because they are not required to exhaust all administrative remedies before raising an issue in a separate civil action, they maintain that the trial court erred in dismissing their complaint for declaratory judgment. See *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388 (failure to exhaust administrative remedies is not a jurisdictional defect but is merely an affirmative defense). Again, we disagree.

{¶ 45} We acknowledge that the Supreme Court in *Jones* held that the affirmative defense of failing to exhaust administrative remedies is not a jurisdictional prerequisite that would bar a subsequent declaratory action. Id. at syllabus. Appellants, however, appear to believe that *Jones* implies that a declaratory action, particularly one filed during the pendency of an administrative proceeding, is impervious to a motion to dismiss. We do not agree with this interpretation. Indeed, if there are sufficient, reasonable grounds for dismissing a declaratory action separate from a party's failure to exhaust available administrative remedies, nothing prevents the court from entering a judgment of dismissal. This argument is therefore not well taken.

{¶ 46} As discussed above, the special statutory proceedings set forth in R.C. Chapter 4112 afford appellants the option of making the challenges pleaded in counts one and two of their complaint for declaratory action. Because these proceedings provide an equally serviceable remedy as an action for declaratory judgment, they may not be bypassed. We therefore hold that the trial court

acted within its discretion in dismissing appellants' complaint for declaratory judgment.

{¶ 47} Appellants' second assignment of error is overruled.

{¶ 48} For the reasons discussed in this case, appellants' two assignments of error are overruled and the judgment of the Lake County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

CANNON, P.J., concurs.

GRENDELL, J., concurs in part and dissents in part.

DIANE V. GRENDELL, Judge, concurring in part and dissenting in part.

{¶ 49} I respectfully dissent from the majority's decision with respect to the dismissal of plantiffs' claims for violations of Section 1983, Title, 42, U.S.Code, and for intentional infliction of emotional distress. It cannot be said, based on the fasts alleged in the complaint, that the defendants are entitled to immunity or that the plaintiffs cannot prove their claims for violation of their federal rights and/or intentional infliction of emotional distress.

{¶ 50} In the first assignment of error, this court must consider whether the trial court erred in granting the appellees' Civ.R. 12(B)(6) motion to dismiss based on the affirmative defense of absolute immunity to the conduct of individual defendants, Cordray, Tobocman, Wilkerson, Choi, and Martin.

{¶ 51} "In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, at the syllabus. In making this determination, the trial court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. Immunity is an affirmative defense. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 97, 706 N.E.2d 1261. Because, in ruling on a Civ.R. 12(B)(6) motion to dismiss, the trial court is limited to the allegations made in the complaint, "unless the complaint on its face demonstrates the existence of a defense that conclusively bars the plaintiff's claim, a Civ.R. 12(B)(6) motion based on an affirmative defense cannot result in the dismissal of a complaint." *Huffman v. Willoughby,* 11th Dist. No. 2007–L–040, 2007-Ohio-7120, 2007 WL 4564384, at ¶ 23.

{¶ 52} In the present case, the individual defendants are alleged to have demanded the payment of money to the Fair Housing Center, beyond and inconsistent with the scope of their authority as state agents, to allow appellants to avoid prosecution under Ohio's housing-discrimination statutes, and to have threatened further prosecution in the event their demand is not met.

{¶ 53} The trial court found that defendants Cordray and Tobocman were entitled to absolute immunity, based on their statutorily defined role of "represent[ing] the [civil rights] commission at any hearing" and "present[ing] the evidence in support of the complaint." R.C. 4112.05(B)(6). The court found that defendants Wilkerson, Choi, and Martin were entitled to absolute immunity because they are authorized to perform "certain functions analogous to those of a prosecutor." The court erred by overlooking the fact that while the defendants enjoy absolute immunity when acting in a certain capacity, the complaint does not seek to impose liability for actions taken in that capacity. In other words, the fact that the defendants possess a defense that would conclusively bar the plaintiffs' claim does not demonstrate that they can prove no set of facts entitling them to recovery. As the plaintiffs rightly acknowledged in their appellate brief, "[i]f, after discovery, the facts establish that indeed these defendants only acted within the limited role protected by prosecutorial immunity, defendants-appellees will have the opportunity to present such evidence in support of a motion for summary judgment." Cf. *State ex rel. Fatur v. Eastlake*, 11th Dist. No. 2009–L–037, 2010-Ohio-1448, 2010 WL 1254369, at ¶ 29 (denial of appellant's motion to dismiss was proper where "[a] review of appellee's complaint reveals claims that would fall outside of the immunity provided [by statute]").

{¶ 54} Accordingly, I dissent from the majority's conclusion that the plaintiffs can prove no set of facts demonstrating that Cordray and Tobocman were acting *outside the scope* of their prosecutorial immunity.

{¶ 55} The majority correctly finds that the allegations in the complaint are insufficient to conclude that, as a matter of law, the administrative officers in question, Wilkerson, Choi, and Martin, were functioning in this case in a manner akin to prosecutor. ¶ 20. However, the majority proceeds to dismiss the claims against these defendants on the grounds that the plaintiffs have not alleged sufficient facts to state a claim under the causes of action pleaded in their complaint.

{¶ 56} With respect to the plaintiffs' claim of alleged violations of Section 1983, Title 42, U.S.Code, the majority interprets the claim to be one for malicious prosecution. This interpretation of the plaintiffs' claim is unnecessary and disregards the actual substance of the plaintiffs' allegations. The plaintiffs' third claim for relief states:

{¶ 57} "63. The individually named Defendants in their individual capacities, acting individually, collectively and/or in furtherance of a conspiracy, all while under color of state law, deprived Plaintiffs of rights secured by the United States Constitution and other Federal laws in violation of 42 USC § 1983.

{¶ 58} "64. Defendant's [sic] violations of 42 USC § 1983 were committed with actual and/or implied malice in conscious disregard of Plaintiffs' rights."

{¶ 59} "A complaint alleging Section 1983 as the basis for the action must meet two requirements. First, there must be an allegation that the conduct in question was performed by a person under color of law. Second, the conduct must have deprived appellee of a federal right." *Cooperman v. Univ. Surgical Assocs., Inc.* (1987), 32 Ohio St.3d 191, 199, 513 N.E.2d 288, citing *Gomez v. Toledo* (1980), 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 ("By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute").

{¶ 60} The plaintiffs' complaint with respect to Section 1983 satisfies these two basic requirements under Ohio's standards for notice pleading. Civ.R. 8(A) ("A pleading * * * shall contain * * * a short and plain statement of the claim showing that the party is entitled to relief"). It cannot be said, "beyond doubt," that the plaintiffs can prove no set of facts entitling them relief based on the face of the complaint, and the construal of plaintiffs' Section 1983 claim as one for malicious prosecution is without justification.

{¶ 61} Likewise, I dissent from the majority's casual dismissal of plaintiffs' claim for intentional infliction of emotion distress as "derivative" of the Section 1983/malicious prosecution claim. A cause of action for intentional infliction of emotional distress is distinct from a cause of action for a violation of Section 1983. There is nothing on the face of the plaintiffs' complaint to demonstrate, "beyond doubt," that they cannot prove a set of facts entitling them to relief for infliction of emotional distress.

{¶ 62} With respect to the plaintiffs' claim of alleged violations of Section 1985, Title 42, U.S.Code, I agree that they have failed to state a cause of action. "[I]n order to prove a private conspiracy in violation of the first clause of § 1985(3), a plaintiff must show, *inter alia*, * * * that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" *Bray v. Alexandria Women's Health Clinic* (1993), 506 U.S. 263, 267–268, 113 S.Ct. 753, 122 L.Ed.2d 34, quoting *Griffin v. Breckenridge* (1971), 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338. The plaintiffs made no allegation that the alleged conspiracy was motivated by a racial or class-based animus.

{¶ 63} Accordingly, I dissent from the majority's decision to affirm the dismissal of plaintiffs' claims for violations of Section 1983 and for intentional infliction of emotional distress as to all defendants.