[Cite as *Arms Trucking Co., Inc. v. Braun*, 2014-Ohio-5077.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| ARMS TRUCKING CO., INC., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2014-G-3186** |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION a.k.a. FANNIE MAE, et al., | : | |
| Defendants, | : | |
| ARTHUR BRAUN, et al., | : | |
| Defendants-Appellants. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12 M 000823.

Judgment: Affirmed.

*Jay R. Carson* and *Robert K. McIntyre,* Wegman, Hessler & Vanderburg, 6055 Rockside Woods Boulevard, Suite 200, Cleveland, OH 44131 (For Plaintiff-Appellee).

*Katherine M. Braun,* Kordic & Braun, 820 West Superior Avenue, Suite 100, Cleveland, OH 44113 (For Defendants-Appellants).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Arthur Braun and Audrey Braun, appeal the judgment entered by the Geauga County Court of Common Pleas dismissing their counterclaim for tortious interference with contract and defamation against appellee, Arms Trucking Co., Inc. This court dismissed a prior appeal filed by the Brauns in this matter due to the

lack of a final, appealable order. This is the Brauns' second appeal in this matter. For the reasons that follow, the trial court's judgment is affirmed.

{¶2} In August 2012, appellee, Arms Trucking Co. Inc., filed a complaint against five defendants, Federal National Mortgage Association ("Fannie Mae"), New Market Title Company, the Geauga County Recorder, and the Brauns. Arms Trucking sought declaratory relief and an injunction against the Brauns.

{¶3} In its complaint, Arms Trucking, a sand-and-gravel mining business, alleged it had an interest in the subject real property, which is a seven-acre parcel located at 15190 Rider Road in Burton, Ohio. Arms Trucking alleged that in 2003, the owner of the property, Donna Zaverl, sold the property to Haueter Sand and Gravel by land installment contract. However, neither the land contract nor Haueter's deed to the property was recorded. The complaint alleged that in March 2012, Haueter entered into a management agreement with Arms Trucking, pursuant to which Haueter leased the property to Arms Trucking and granted it the right to operate a sand-and-gravel mining operation there. Arms Trucking alleged it also obtained a permit to mine the property from the Ohio Department of Natural Resources.

{¶4} Arms Trucking alleged that Donna Zaverl fell behind on her mortgage payments and in March 2011, her mortgage lender, Chase Bank, filed a foreclosure action against the property. Arms Trucking alleged in the complaint that Chase had actual knowledge of the land installment contract and Arms Trucking's mining rights in the property when it filed the foreclosure action. In September 2011, Chase obtained a foreclosure decree and an order that the property be sold at sheriff's sale.

{¶5}  According to the complaint, in December 2011, Chase purchased the property at sheriff's sale, and subsequently sold it to Fannie Mae.  Arms Trucking claims in the complaint that Fannie Mae knew about Haueter's purchase of the property and Arms Trucking's interest in it.  Arms Trucking alleged that Fannie Mae offered the property for sale through its "First Look" program, which is intended to restore at-risk neighborhoods.  Under this program, during the first 15 days that Fannie Mae lists a property for sale (the "first look" period), Fannie Mae entertains bids only from buyers who plan to use the property as their primary residence ("owner-occupants").  Thereafter, other potential buyers may bid on the property.  Audrey Braun submitted a bid and entered a contract with Fannie Mae to buy the property.

{¶6}  Arms Trucking alleged that because Fannie Mae knew that Arms Trucking claimed an interest in the property, any contract to transfer the property and any deed associated with such transfer that did not recognize Arms Trucking's rights would be invalid.  Arms Trucking alleged it disputed the validity of the contract between Fannie Mae and Audrey Braun.  Arms Trucking further alleged that Audrey Braun did not qualify as an "owner-occupant" eligible to bid on the property during the first look period.  Arms Trucking prayed for a declaration that the contract between Audrey Braun and Fannie Mae is invalid because Audrey Braun is not a qualified owner-occupant eligible to participate in Fannie Mae's first look program.  Arms Trucking also requested a declaration that it has mining rights in the property pursuant to its management agreement with Haueter and its mining permit.  In addition, Arms Trucking alleged that if the contract between Audrey Braun and Fannie Mae proceeds to closing, it will be

3

irreparably harmed because it will lose significant property rights. Thus, Arms Trucking also prayed for an injunction to enjoin the pending sale of the property to the Brauns.

{¶7} In October 2012, the Brauns filed their answer denying the material allegations of the complaint. The Brauns' answer included a two-count counterclaim against Arms Trucking. In Count II, the Brauns alleged that by filing its complaint, Arms Trucking tortiously interfered with Brauns' contract to purchase the property. In Count II, the Brauns alleged that Arms Trucking defamed Audrey Braun by alleging she did not qualify as an owner-occupant eligible to bid on the property during the first look period.

{¶8} Between November and December 2012, Arms Trucking voluntarily dismissed all defendants other than the Brauns. With respect to Fannie Mae, in December 2012, Arms Trucking entered a settlement agreement with that defendant, pursuant to which Fannie Mae terminated the proposed sale to the Brauns and sold the property to Arms Trucking and Arms Trucking dismissed its claim against Fannie Mae. The Brauns filed no pleading challenging Fannie Mae's sale of the property to Arms Trucking.

{¶9} Thereafter, in December 2012, Arms Trucking filed a Civ.R. 12(B)(6) motion to dismiss the Brauns' counterclaim, arguing that the allegations in the complaint were privileged as part of a judicial proceeding and thus not actionable as an interference with the Brauns' purchase contract with Fannie Mae or as defamation. The Brauns filed a brief in opposition, arguing that the Auditor's website shows the subject parcel is not one of the listed parcels in the management agreement. However, they never asserted this in their answer or in a crossclaim against Fannie Mae.

4

{¶10} On January 18, 2013, the trial court entered judgment granting Arms Trucking's motion to dismiss the Brauns' counterclaim. Thereafter, Arms Trucking's claims against the Brauns remained pending, and the court's entry did not include a determination under Civ.R. 54(B) that there is no just reason for delay.

{¶11} About ten days later, on January 29, 2013, the Brauns filed a motion for relief from the trial court's judgment dismissing their counterclaim. As grounds, the Brauns argued that Arms Trucking had engaged in misrepresentation by falsely alleging in its complaint that it had an interest in the property. In support, the Brauns filed several pages from the Geauga County Auditor's website, which, they argued, showed the property covered by the management agreement did not include the subject property. Arms Trucking filed a brief in opposition. On May 1, 2013, the trial court entered judgment denying the Brauns' motion for relief from judgment.

{¶12} In its judgment, the trial court found that the Brauns' motion for relief from judgment lacked merit because it was improperly being used as a substitute for an appeal. The court found that if the case had gone to trial, Arms Trucking would have been required to prove the allegation in its complaint that it had an interest in the property, but that because the case did not go to trial, whether Arms Trucking had an interest in the property was nothing more than a matter for speculation.

{¶13} The Brauns appealed the trial court's judgment denying their motion for relief from judgment. After the parties filed their respective briefs in that appeal, this court reviewed the status of the case. Because it appeared that the trial court may not have entered a final order, this court entered an order requiring the Brauns to show cause why the case should not be dismissed for lack of a final, appealable order. In

5

response, the Brauns filed a "Statement in Opposition to Jurisdiction and Memorandum of Arthur and Audrey Braun, Defendants-Appellants." In this "Statement," the Brauns conceded that neither the judgment dismissing their counterclaim nor the judgment denying their motion to vacate the dismissal of their counterclaim was a final, appealable order. They therefore conceded they had no legal or factual basis to file their appeal. Despite this concession, the Brauns did not explain why they filed the appeal; why they did not dismiss it; why they allowed the appeal to remain active on this court's docket so long that Arms Trucking was required to prepare and file its answer brief; and why they still did not dismiss the appeal even after this court suggested there was no final, appealable order.

{¶14} Instead, in their Statement, the Brauns requested that this court remand this matter with "instructions" to the trial court to "reconsider" their motion for relief from judgment. They further requested that if it became necessary for them to again appeal the trial court's judgment, they be allowed to file another appeal at no cost to them. The Brauns cited no precedent that would have authorized this court to grant them leave to file another appeal at some unspecified time on some speculative ground in the future, let alone to do so without cost.

{¶15} As a result, on November 25, 2013, this court dismissed the Brauns' appeal in *Arms Trucking Co., Inc. v. Fannie Mae*, 11th Dist. Geauga No. 2013-G-3149, 2013-Ohio-5192 ("*Arms Trucking I*"), on the ground that the court's judgment denying their motion to vacate the judgment dismissing their counterclaim was not a final order. *Id.* at ¶11.

6

{¶16} One month later, the Brauns filed a motion in the trial court for reconsideration of the court's May 1, 2013 judgment denying their motion for relief from judgment. In support, the Brauns once again argued they were entitled to relief from the court's judgment dismissing their counterclaim because Arms Trucking had falsely claimed it had an interest in the property.

{¶17} On January 22, 2014, Arms Trucking filed a notice of dismissal of its claims against the Brauns pursuant to Civ.R. 41(A).

{¶18} On January 27, 2014, the trial court overruled the Brauns' motion for reconsideration, concluding that said motion did not present anything to the court that was not considered in the court's denial of the Brauns' earlier motion for relief from judgment.

{¶19} The Brauns now appeal the trial court's January 18, 2013 judgment dismissing their counterclaim; the trial court's May 1, 2013 judgment denying their motion for relief from judgment; and the trial court's January 27, 2014 judgment denying their motion for reconsideration, asserting two assignments of error. For their first assignment of error, the Brauns contend:

{¶20} "The trial court committed prejudicial error by dismissing the Brauns' Counterclaim when Arms Trucking's claim of privilege was based upon misrepresentation of a material fact."

{¶21} As this court noted in *Arms Trucking I*, the trial court's dismissal of the Brauns' counterclaim was not a final order because, at that time, Arms Trucking's claims against them remained pending and the dismissal did not include a finding that there was no just reason for delay. However, once Arms Trucking dismissed its claims

7

against the Brauns after this court's dismissal of *Arms Trucking I*, no other claims remained pending and the trial court's dismissal of the Brauns' counterclaim then became a final, appealable order. As a result, the trial court's dismissal of the Brauns' counterclaim is properly before us.

{¶22} A court of appeals reviews a trial court's judgment dismissing a pleading asserting a claim for relief, such as a complaint or counterclaim, pursuant to Civ.R. 12(B)(6) de novo. *Goss v. Kmart Corp.*, 11th Dist. Trumbull No. 2006-T-0117, 2007-Ohio-3200, ¶17; *BAC Home Loan Servicing, LP v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶33 (12th Dist.). A motion to dismiss for failure to state a claim on which relief can be granted is procedural and tests the sufficiency of the complaint or counterclaim. *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548 (1992). When reviewing a judgment involving a Civ.R. 12(B)(6) motion to dismiss, an appellate court must accept the allegations and all reasonable inferences found in the complaint or counterclaim as true. *Viking & Worthington Steel Enter., L.L.C. v. James*, 11th Dist. Geauga No. 2010-G-2971, 2011-Ohio-1714, ¶40. However, in ruling on a Civ.R. 12(B)(6) motion to dismiss, an appellate court will not consider conclusions that are not supported by factual allegations in the pleading because such conclusions cannot be deemed admitted and are insufficient to withstand a motion to dismiss. *State ex rel. Hickman v. Capots*, 45 Ohio St.3d 324 (1989); *Silverman v. Roetzel & Andress, L.P.A.*, 168 Ohio App.3d 715, 2006-Ohio-4785, ¶6 (10th Dist.). Further, in ruling on a Civ.R. 12(B)(6) motion to dismiss, the trial court is strictly limited to the allegations in the complaint or counterclaim, and may not consider any materials outside the pleading. *Braden v. Sinar*, 9th Dist. Summit No. 23656, 2007-Ohio-4527,

8

¶23. If, after considering the complaint or counterclaim accordingly, there is no set of facts consistent with appellants' allegations that would permit recovery, the judgment of dismissal will be affirmed. *Transky v. Ohio Civil Rights Comm'n.*, 193 Ohio App.3d 354, 2011-Ohio-1865, ¶11 (11th Dist.).

{¶23} The Brauns' first assignment of error challenges the trial court's dismissal of Count I of their counterclaim, alleging that Arms Trucking tortiously interfered with their contract with Fannie Mae. The Brauns argue that by filing its complaint alleging it had an interest in the property, Arms Trucking tortiously interfered with their contract with Fannie Mae because that entity subsequently chose not to proceed with its contract with the Brauns and, instead, sold the property to Arms Trucking.

{¶24} A claim for tortious interference with contract requires proof that: 1) a valid contract existed; 2) the defendant was aware of the existence of the contract; 3) the defendant intentionally procured a breach of the contract; 4) the defendant lacked justification for his conduct; and 5) the plaintiff suffered damages as a result of the defendant's conduct. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419 (1995). "'In the event a complaint fails to provide allegations regarding each of [the] elements [of a tortious-interference claim], the complaint can properly be dismissed for failure to state a claim upon which relief can be granted.'" *Gibson v. City Yellow Cab Co.*, 9th Dist. Summit No. 20167, 2001 Ohio App. LEXIS 518, *5 (Feb. 14, 2001), quoting *Schiavoni v. Steel City Corp.*, 133 Ohio App.3d 314, 317 (7th Dist.1999).

{¶25} The Brauns argue on appeal that Arms Trucking lacked justification to interfere with their contract with Fannie Mae because, they contend, Arms Trucking had no interest in the property when it filed the complaint. However, the Brauns'

counterclaim did not provide any allegations regarding Arms Trucking's lack of interest in the property, i.e., its lack of justification, the fourth element of a claim for tortious interference with contract. Therefore, assuming the Brauns' allegations in their counterclaim to be true, as we must for purposes of this review, the Brauns are unable to prove any set of facts which would entitle them to relief on their claim of tortious interference with contract. *Gibson*, *supra*, at *8-*9.

{¶26} In support of the Brauns' argument that Arms Trucking lacked justification to interfere with their contract with Fannie Mae, they refer to the Geauga County Auditor's website, which, they contend, shows the property covered by Haueter's management agreement with Arms Trucking did not include the subject property. However, based on the authority cited above, in considering Arms Trucking's motion to dismiss the Brauns' counterclaim, the trial court was limited to a review of the allegations of the counterclaim and was not entitled to consider any facts or materials outside that pleading. Our review of the counterclaim reveals that nowhere in that pleading did the Brauns allege anything about the Auditor's website. Thus, the trial court was not entitled to consider information on the Auditor's website in ruling on Arms Trucking's motion to dismiss.

{¶27} In any event, even if the Brauns had stated a claim for tortious interference, Ohio courts recognize the defense of qualified privilege to such claim. *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, ¶62 (8th Dist.2009). Under this defense, one is privileged to purposely cause another not to perform a contract with a third person by asserting in good faith a legally protected

10

interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract. *Id.*; Restatement of the Law 2d, Torts, Section 773 (1979).

{¶28} Once the privilege is found to exist, it can only be defeated by a clear and convincing showing of "actual malice." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 11 (1995); *Jacobs v. Frank*, 60 Ohio St.3d 111 (1991), paragraph two of the syllabus. "'[A]ctual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* Where a complaint alleges it was filed to protect the plaintiff's property interests, a conclusory allegation by a defendant in a counterclaim that the plaintiff's lawsuit was a "malicious" act is insufficient to overcome the plaintiff's privilege to file the complaint. *Ament, supra*, at ¶64. In order to defeat the privilege, the defendant must plead facts demonstrating actual malice. *Id.*

{¶29} Arms Trucking specifically alleged in its complaint that it acquired an interest in the property pursuant to the management agreement in which Haueter leased the property to it in order to operate a sand-and-gravel mining operation. Further, Arms Trucking alleged it had obtained a permit from the Ohio Department of Natural Resources to mine the property. Moreover, Arms Trucking alleged Fannie Mae was on notice of its interest in the property and Fannie Mae's proposed sale of the property to the Brauns would extinguish its right to mine the property. Thus, Arms Trucking alleged sufficient facts in its complaint to support its contention that it was privileged to interfere with the Brauns' contract with Fannie Mae.

{¶30} The Brauns concede that the management agreement gave Arms Trucking mining rights in six different parcels of property, but argue the management

11

agreement did not grant mining rights to Arms Trucking in the subject property. However, as noted above, the information on the Auditor's website on which the Brauns relied in their motion to vacate is not properly before us as the Brauns failed to refer to it in their counterclaim. Nor did the Brauns allege in their counterclaim facts demonstrating that Arms Trucking *knew* it had no interest in the property or was *reckless* in that regard. In fact, the Brauns did not allege in their counterclaim any facts supporting their claim that Arms Trucking filed its complaint with actual malice. To the contrary, they merely alleged in conclusory terms that Arms Trucking maliciously filed its complaint with no basis in law or fact.

{¶31} The facts in this case are quite similar to those in *Ament, supra*. There, the plaintiff-trustee sued a life insurance company and a recently-named policy beneficiary, alleging that the new beneficiary used undue influence to convince the decedent policy-holder to change her original beneficiary designation. The new beneficiary filed a counterclaim for tortious interference with the insurance contract. The plaintiff moved to dismiss the counterclaim pursuant to Civ.R. 12(B)(6), arguing the trust had an interest in the insurance proceeds. Similar to the Brauns' allegations, the defendant alleged in his counterclaim that the plaintiff's suit was a "malicious, baseless act" and thus not privileged. The trial court granted the motion to dismiss and the Eighth District affirmed, holding that the defendant's conclusory allegations were insufficient to overcome the plaintiff's privilege as trustee to protect the trust's interest in the insurance proceeds via a lawsuit. *Ament, supra*, at ¶64.

{¶32} In summary, Arms Trucking demonstrated its privilege to file the complaint by alleging that it had an interest in the property, which allegedly survived the

12

foreclosure because Fannie Mae knew about Haueter's purchase of the property and Arms Trucking's interest in it.

{¶33} Further, while the information on the Auditor's website would have been pertinent to the ultimate issue in this case, i.e., Arms Trucking's interest in the property, that issue is not before us in this appeal. On Arms Trucking's Civ.R. 12(B)(6) motion to dismiss, the trial court's review was limited to the allegations in the Brauns' counterclaim, and it could not consider any materials outside that pleading. Thus, our review is limited to determining whether the counterclaim properly alleged a claim for tortious interference with contract. As such, the Brauns were required to allege in their counterclaim that Arms Trucking had *no interest in the property* and *facts showing actual malice* on the part of Arms Trucking, i.e., that Arms Trucking knew it had no interest in the property or was reckless in that regard. *Jacobs*, *supra*. Because no such allegations appear in the counterclaim, the trial court properly dismissed the Brauns' counterclaim for tortious interference. The Brauns' conclusory allegation that the complaint was filed maliciously was insufficient to overcome Arms Trucking's privilege to protect its interest in the property as described in the complaint via a lawsuit. *Ament*, *supra*.

{¶34} If the Brauns wanted to pursue their interest in the property, that objective could have been accomplished by including a counterclaim against Arms Trucking and a cross-claim against Fannie Mae seeking declaratory judgment to establish their interest in the property. From the information on the Auditor's website, it appears they may have had a legitimate challenge to Arms Trucking's interest in the property. However, by failing to properly assert it in such pleading, the challenge was waived.

**{¶35}** We therefore hold that the Brauns' conclusory allegation in their counterclaim that Arms Trucking maliciously filed the complaint without any basis in law or fact was insufficient to overcome Arms Trucking's privilege to protect its interest in the property via a lawsuit. Thus, the trial court did not err in granting Arms Trucking's motion to dismiss the Brauns' counterclaim for tortious interference with contract.

**{¶36}** The Brauns' first assignment of error is overruled.

**{¶37}** For their second assigned error, the Brauns allege:

**{¶38}** "The trial court committed prejudicial error by dismissing the Brauns' Counterclaim when the defamatory statements in the Complaint are not protected by the doctrine of absolute privilege."

**{¶39}** In their second assigned error, the Brauns challenge the trial court's dismissal of Count Two of their counterclaim alleging defamation.

**{¶40}** Defamation is a false publication that injures a person's reputation or exposes that person to public hatred, contempt, ridicule, or shame, or affects him adversely in his trade or business. *Dale v. Ohio Civ. Serv. Emp. Assn.*, 57 Ohio St.3d 112, 117 (1991); *Cleveland Leader Printing Co. v. Nethersole*, 84 Ohio St. 118 (1911). Defamation can occur in one of two forms. Written defamation is known as libel; spoken defamation is known as slander. Restatement of the Law 2d, Torts, Section 568 (1977).

**{¶41}** Moreover, there are two kinds of defamation. A statement is "defamation per se" if, on its face, it reflects on a person's character in a manner that will cause him to be ridiculed, hated, or held in contempt, or in a manner that will injure him in his trade or profession. *Becker v. Toulmin*, 165 Ohio St. 549, 553, 556 (1956). On the other

14

hand, "defamation per quod" is a statement with an apparently innocent meaning, which becomes defamatory through interpretation or innuendo. *Id.*

**{¶42}** The allegation in the complaint which the Brauns contend constitutes defamation is that Audrey Braun did not qualify as an owner-occupant under Fannie Mae's "first look" program. Based on the foregoing authority, this allegation does not constitute defamation because it is neither defamation per se nor defamation per quod. There is nothing about this allegation that would, on its face, cause Ms. Braun to be ridiculed, hated, or held in contempt. Thus, the allegation is not defamation per se. Alternatively, the Brauns do not explain and we do not perceive how the allegation could be interpreted in such a manner as to have such effect. As a result, the allegation is not defamation per quod.

**{¶43}** In any event, the Brauns' counterclaim for defamation is barred by the doctrine of absolute privilege. The Supreme Court of Ohio in *Surace v. Wuliger*, 25 Ohio St.3d 229 (1986), held that "as a matter of public policy, under the doctrine of absolute privilege in a judicial proceeding, a claim alleging that a defamatory statement was made in a written pleading does not state a cause of action where the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears." *Id.* at 233. Such a privilege is applicable even though the statement may have been made with actual malice, in bad faith and with knowledge of its falsity. *Bigelow v. Brumley*, 138 Ohio St. 574, 579 (1941).

**{¶44}** The Brauns argue that the absolute privilege does not apply to Arms Trucking's allegation that Audrey Braun is not eligible to bid on the property because this allegation had no relation to Arms Trucking's action. In explaining the privilege's

15

requirement that the statement bear "some reasonable relation to the judicial proceeding in which it appears," the Supreme Court in *Surace, supra*, rejected its previous holding that in order to be privileged, the defamatory statement was required to be relevant to the proceedings. The Court stated that its former standard was unduly restrictive because it gave the mistaken impression that the absolute privilege in court proceedings extended only to matters that were "legally" relevant. *Id.* at 232. The court adopted a more "liberal" standard, holding that any statement made in a court proceeding is absolutely privileged if it bears "some reasonable relation to the judicial proceeding in which it appears." *Id.* at 234-235.

{¶45} Contrary to the Brauns' argument, Arms Trucking's allegation that Ms. Braun was not a qualified owner-occupant was reasonably related to this action. By its complaint, Arms Trucking sought to have its rights in the property determined and to enjoin the sale of the property to the Brauns. In alleging that Ms. Braun was not a qualified owner-occupant, Arms Trucking sought to enjoin the sale of the property to her so its right to mine the property would not be extinguished. Thus, the allegation concerning Ms. Braun's ineligibility to purchase the property was protected by the absolute privilege for statements made in a court proceeding.

{¶46} The Brauns additionally argue that Arms Trucking's argument fails because, even if Ms. Braun was not a qualified owner-occupier, Arms Trucking could not be a qualified buyer and compete with the Brauns in bidding on the property. However, under the first look program, Fannie Mae entertains bids only from qualified owner-occupants during the first 15 days that Fannie Mae lists a property for sale.

16

Thus, if Audrey Braun was not qualified as an owner-occupant, she would not be eligible to bid during the first look period, and Arms Trucking could bid on the property.

{¶47} We therefore hold the trial court did not err in dismissing the Brauns' counterclaim for defamation because the allegation in the complaint that Ms. Braun was not a qualified bidder was not defamation, but even if it was, it was reasonably related to the action in which it was made and thus absolutely privileged.

{¶48} The Brauns' second assignment of error is overruled.

{¶49} For the reasons stated in this opinion, appellants' assignments of error are overruled. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.